Eliza A. Martin, Respondent, *v.* Manufacturers' Accident Indemnity Company, Appellant.

1. Accident Insurance — Construction of Receipt for Payment of Indemnity — Non-surrender of Policy as to Subsequent Injury. When a receipt for the payment of an indemnity for an accidental injury, executed by the insured upon a printed blank presented by an accident insurance company, states that the payment is in full satisfaction and final settlement of any and all claims the insured has or may have against the company for loss resulting from injuries received on a certain specified day, under his policy, giving its number, "which is hereby surrendered," and the policy is not delivered up to, or demanded by, the company, but is retained by the insured, and the time for which premiums have been paid to further continue the policy in force has not expired, the words "which is hereby surrendered" are properly construed as referring to the particular claim described in the context, and as indicating that as to that, and that alone, the rights of the insured under the policy were surrendered, when that construction is consistent with the circumstances surrounding the execution of the instrument and the situation of the parties at the time.

2. Cause of Disability or Death — Blood Poisoning Coincident with Accidental Injury. Where, in an action to recover for the death of the insured, under an accident policy which provides that the insurance shall not extend "to any case except where the injury is the proximate and sole cause of the disability or death," it appears that death resulted from blood poisoning in an otherwise non-fatal accidental wound, and there is evidence upon which the jury can find the fact submitted, the court may properly charge the jury that if they find that the virulent matter which produced the blood poisoning was communicated to the wound coïncident with its infliction, and the death was produced by the blood poisoning, it was a death within the policy.

3. Notice of Injury. Where an accident insurance policy or certificate, after prescribing that immediate notice of an injury shall be given to the company, and specifying the particulars to be stated, declares that "failure to give such immediate notice, mailed within ten days from the happening of such accident, shall invalidate all claims under the certificate," the forfeiture clause is properly construed as intended to apply to the failure to furnish a prompt notice, and not to the omission, from a notice promptly furnished, of some particular embraced among those enumerated in the prior clause.

*Martin* v. *Mfrs. Acc. Indemnity Co.*, 71 Hun, 614, affirmed.

(Argued October 12, 1896; decided December 1, 1896.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department, entered October 9, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action is brought by the widow of William A. Martin to recover a death claim under a policy issued by the defendant November 9, 1888, to the said William. The insured died at Binghamton (his place of residence) May 10th, 1889. His death, as the evidence tended to show, and as the jury found, was caused by a slight wound on the second finger of the right hand, made in some way, not clearly explained, on the 27th day of April, 1889, which was immediately followed by blood poisoning, of which he died May 10th, 1889, thirteen days after the injury.

The deceased met with two accidents, one April 8th, 1889, and another (above referred to) April 27th, 1889. His occupation was a bookkeeper. The first accident was the crushing of the thumb of his left hand while using a hammer, a severe and painful accident. The insured made a claim under the policy for the injury, which was settled April 13th, 1889, as hereinafter stated.

The second injury, of April 27th (upon which the death claim is based), occurred, as the evidence tends to show, under the following circumstances : Before breakfast in the morning of that day Mr. Martin took his umbrella (it being a rainy morning) and went to the grocery and returned to his home in about ten minutes. When he came back he set down his umbrella and showed his wife where he had punched out a piece of the skin and flesh about the size of a pea from the inside of the second finger of the right hand and it was then bleeding. He went to the office and was at work as usual all the forenoon and again in the afternoon. When he returned home at night his finger pained him and was swollen and inflamed; after tea he went to the doctor. The swelling and inflammation continued, extended from the finger to the hand and arm, and later to other parts of his body. Red streaks

and spots, as well as pustules, appeared on the injured finger and subsequently on the left leg. It proved to be a violent and unusual case of blood poisoning, of which he died as above stated. The policy in question provided for two claims of indemnity; *first*, for an accident resulting in bodily injuries which "independently of all other causes shall immediately and wholly disable and prevent the insured from the prosecution of any and every kind of business pertaining to his occupation," in which case a weekly payment is to be made to the insured; and, *second*, by reason of the death of the insured, " effected through external, violent and accidental means * * * and such injuries alone shall have occasioned death within ninety days of the happening thereof," in which case the company undertook to pay to the wife of the insured, if surviving, and if not surviving, to his legal representatives, the sum of five thousand dollars from the benefit fund of the company, subject to certain conditions not material upon this appeal.

There were several defenses urged on the trial: (1) That the policy sued upon was not in force at the time of the second injury; (2) that virulent matter from the wound on the thumb (which was not healed at the time of the second injury) was dropped upon the wound subsequently inflicted upon the finger of the right hand, and caused the blood poisoning which caused the death, and that the death was not, therefore, the result alone of the injury to the finger, and, therefore, not a death within the policy; (3) the defendant insisted that conditions as to serving notice had not been complied with.

The question whether the blood poisoning was caused by matter communicated from the wound on the thumb, or was immediately developed from the wound on the finger by inoculation or otherwise at the very time of that injury, was litigated on the trial and medical experts were called by each side to testify on the subject. The court charged the jury, in substance, that if the blood poisoning was caused by contact of the wound on the finger with matter communicated from the thumb after the injury to the finger the plaintiff could not recover.

The defendant, to sustain the defense that the policy was not in force at the time of the second injury, or at the time of the death of the insured, relied upon a receipt or writing executed by the insured April 13th, 1889, given on settlement of the claim for the first injury, in the words and figures following :

" Voucher No...................... Claim No..........
" Assured ....................... Certificate No......

" Received from the Manufacturers' Accident Indemnity Co., of Geneva, N. Y., the sum of Twenty-five Dollars ($25), being in full satisfaction and final settlement of any and all claim I now have or may have against said Company for loss resulting from injuries received on the 8 day of April, A. D. 1889, under my policy No. 12157, which is hereby surrendered.

" Dated at Binghamton, in the State of New York, this 13 day of April, A. D. 1889.

" W. A. MARTIN, Claimant.

" Now 28 Lewis St., Binghamton, N. Y.

" Residence.

" C. L. KING, Witness."

A brief reference to the circumstances under which this paper was executed is necessary to its proper interpretation. The injury to the thumb of the insured on the 8th of April, 1889, was followed the next day by a notice by the insured served by mail on the company at Geneva, stating in substance the cause and nature of the injury, and that a claim was made on account thereof under the policy. The company instructed Mr. King, their general agent, whose residence was at the same place as that of Mr. Martin, to go to Binghamton and settle the claim, investing him with full power in the premises. The general agent thereafter, on the 13th of April, in company with the local agent, called at the store where the insured was employed and found him discharging his ordinary duties. The injury to the thumb, although serious and painful, was to the thumb of the left hand, and did not prevent the insured using his

right hand in discharging his duties as bookkeeper. Conversation ensued between the general agent and the insured. The general agent intimated that the insured was not in strictness entitled to anything under the terms of the policy, since he was not wholly disabled so as to prevent his pursuing his usual occupation. The insured expressed his dissatisfaction that the company should interpose such an objection. The general agent replied in substance that it was for the interest of the company to settle such claims, and asked him what he would take, and added, " You are a neighbor of mine and it is for our interest to settle, and I will give you ten or fifteen dollars." The insured rejected the offer and the general agent again asked him what he would take to settle the matter, adding, "I am here with authority to settle with you." The insured then said, " I will take one week, that is twenty-five dollars," and the agent said, " Yes, to end all this discussion I will pay you." The agent then took from his pocket a printed form and filled in the sum to be paid, the date of the injury, the number of the policy and the day and month of the settlement, and handed it to the assured, saying, " Sign that and I will give you my check." The insured looked at the paper and said, " What does that mean about surrendering my policy ? " The agent replied it was customary to send that to the company with the receipt, but as " it is not here I do not consider it important." Thereupon the insured signed the paper and gave it back to the agent, who paid the insured the $25.00, and subsequently delivered the paper to the defendant. The agent, as he testified, considered the injury a trifling one. In fact the policy was not surrendered. At the time of the transaction it was at the home of the insured and was found among his valuable papers at his death. The vice-president of the defendant testified that when, or soon after, the general agent delivered this paper to the company, a character in pencil was placed on the register opposite the record of the policy, which indicated that it had been surrendered. The words " canceled April 15, 1889," were on the register at the time of the trial. But the inference from the

testimony is that these words were placed there after the death of the insured.

The facts bearing upon the defense of non-compliance with the conditions of the policy as to service of notices, are substantially as follows : The policy provides that, " in the event of any accident · or injury for which any claim may be made under the certificate, immediate notice shall be given in writing, signed by the member or his attending physician, or, in case of death, by the beneficiary, addressed to the secretary of the company at Geneva, N. Y., stating the full particulars as to when, where and how it occurred, and the occupation of the member at the time and his address, and failure to give such immediate notice, mailed within ten days from the happening of such accident, shall invalidate all claim under this certificate." On May 2d, 1889, within ten days after the second accident, Mr. Martin being confined to his bed, directed his daughter to write and send a notice of his injury to the defendant. She prepared and mailed a notice to the company on that day, signed in the name of her father, stating : " Please take notice that I sustained quite a serious injury on the 27th ult., while cleaning my thumb, which you are aware was injured some time ago, by communicating the virus to a little cut on my other hand. My doctor hopes I will come out all right ere long," and giving the number of his policy. The company received this notice in due course of mail and filed it with the papers connected with the policy, but did not return it or communicate in any way with the insured in respect to it.

There is evidence to show that the thumb was in a healthy condition when the second injury occurred and a new nail was forming. It also appears that the thumb was dressed before the insured left his house to go to the grocery on the morning when the second injury occurred. It also appeared that the insured when he instructed the daughter to prepare the notice of the 2d of May, said he supposed the virus from the thumb had communicated with the wound on the finger. It was claimed on the trial on behalf of the plaintiff that it might

have come from some deposit on the umbrella he was using when the second wound was inflicted.

All assessments had been paid on the policy prior to either injury, so as to keep it in life to June 9, 1889. On the 9th of May, 1889, the company mailed to the insured a notice of assessment, stating: "Your insurance stands on our books as paid to June 9th, 1889. Your next bi-monthly premium of $2.00 is now due. Time of payment expires June 9th, 1889." It was claimed in behalf of the defendant, and there was evidence tending to show, that this notice was sent by one of the clerks by mistake and in violation of his duty. On the 14th of May, 1889, notice of death of the insured was mailed to the company, signed by the son of the plaintiff in her name, which notice gave the number of the policy, the day of the death, and stated that the death "was the result of an accident a short time ago received," but giving no further particulars, and the notice was retained by the defendant. This notice was followed a few days after by proofs of death served on the company, which proofs the company returned, assigning no reason so far as appears.

The court submitted to the jury three questions, in substance:

(1) Whether the blood poisoning which caused the death of Mr. Martin was coincident with the infliction of the wound on the finger, and a part of the accident.

(2) Whether the notice of the injury, in case the jury found there was a mistake in the statement as to the cause of the blood poisoning, was given in good faith and without intent to mislead the company.

(3) Whether the failure in the notice of death to comply with the strict requirements of the policy as to particulars, etc., was waived by the company.

The defendant asked the court to charge as matter of law that the policy was not in force at the time of the death, and that the effect of the transaction of April 13th, 1889, was to surrender and cancel it. This request was refused and exception was duly taken. Other exceptions appear in the record.

*Alex. Cumming* for appellant.    The policy was surrendered and canceled the 13th day of April, 1889, and then ceased to have any validity or force.    (*Hooper* v. *A. D. Ins. Co.*, 5 H. & N. 546; *Rhodes* v. *R. P. Ins. Co.*, 5 Lans. 71; *Sawyer* v. *U. S. C. Co.*, 8 Am. Law Reg. [N. S.] 233; *Saveland* v. *F. & C. Co.*, 67 Wis. 174; *Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 429; *Norton* v. *Coons*, 6 N. Y. 33; *Van Bokkelen* v. *Taylor*, 62 N. Y. 105; *Marsh* v. *McNair*, 99 N. Y. 180; *House* v. *Walch*, 144 N. Y. 418; *Thomas* v. *Scutt*, 127 N. Y. 133.) The death of William A. Martin was not effected through external, violent and accidental means alone, within the meaning of the policy and its conditions.    (*Whitlatch* v. *F. & C. Co.*, 149 N. Y. 45; 7 Am. & Eng. Ency. of Law, 491, 492, 493; *Abbott* v. *People*, 86 N. Y. 471; *Pindar* v. *K. Co. Ins. Co.*, 36 N. Y. 650; *People* v. *Murphy*, 101 N. Y. 130, 131; *Wheeler* v. *Spinola*, 51 N. Y. 668; 69 Penn. St. 43; *Mallory* v. *T. Ins. Co.*, 47 N. Y. 52; *Sinclair* v. *M. P. A. Co.*, 3 El. & E. 478; *Ripley* v. *R. P. A. Co.*, 2 Bigelow's Cas. 738; *P. L. Ins. Co.* v. *Martin*, 32 Md. 310; *Smith* v. *A. Ins. Co.*, L. R. [5 Exch.] 302.)    Plaintiff cannot recover if the injury of April 8, 1889, caused or contributed to the death. (4 Wait's Act. & Def. 111; *Gamble* v. *A. A. Co.*, 4 C. L. 204.)    The death of William A. Martin was not effected through external, violent and accidental means alone, within the meaning of the policy and its conditions.    (*Bacon* v. *U. S. M. A. Assn.*, 123 N. Y. 304; *Paul* v. *T. Ins. Co.*, 112 N. Y. 478; *Southard* v. *R. P. A. Co.*, 34 Conn. 574; *McCarthy* v. *T. Ins. Co.*, 8 L. J. 208; *Barry* v. *U. S. M. A. Assn.*, 12 Ins. L. J. 730.)

*D. H. Carver* for respondent.    The question of the cancellation of the policy was fairly submitted to the jury, and the jury by their verdict found that the policy was not surrendered or canceled, but was in full force at the time of assured's death, and there is ample evidence to support that finding.    (*Ryan* v. *Ward*, 48 N. Y. 204; *Mosel* v. *F. B. Co.*, 2 App. Div. 93; *Thomas* v. *Scutt*, 127 N. Y. 141; *Walls* v.

*Bailey*, 49 N. Y. 469; *Collender* v. *Dinsmore*, 55 N. Y. 206; *Pfeiffer* v. *Campbell*, 111 N. Y. 631; *Crawford* v. *Mills-paugh*, 13 Johns. 87; *Jackson* v. *Stackhouse*, 1 Cow. 122; *Ramsden* v. *Hylton*, 2 Vesey Sr. 310; *Brick* v. *Campbell*, 122 N. Y. 345; *Van Nest* v. *Talmadge*, 17 Abb. Pr. 99.) The jury have passed upon the question as to the cause of the death of the assured, and have found that the accidental injury to the finger on April twenty-seventh was the approximate and sole cause of death, and the evidence fully justifies the finding. (*Paul* v. *T. Ins. Co.*, 112 N. Y. 472; *Healey* v. *M. A. Assn.*, 133 Ill. 556.) The notice of injury written by the daughter and sent to the company was a substantial compliance with the provisions of the policy. (May on Insurance, 566; Bliss on Insurance, 443; 60 Penn. St. 43; *Willis* v. *G. Ins. Co.*, 79 N. C. 285; *Barker* v. *P. Ins. Co.*, 8 Johns. 317; *Bumstead* v. *D. M. Ins. Co.*, 12 N. Y. 81; *Walsh* v. *W. M. Ins. Co.*, 32 N. Y. 427; Bacon on Life Ins. § 412; *Brink* v. *G. M. A. Assn.*, 130 N. Y. 675; *Little* v. *P. Ins. Co.*, 136 Mass. 380.) The jury have also found that the notice of death was given in good faith, and its non-compliance with the terms of the policy was waived by the defendant. (*Bushaw* v. *W. M. I. & A. Co.*, 28 N. Y. S. R. 527; *Dennis* v. *M. B. Assn.*, 120 N. Y. 496; *Hermann* v. *N. F. Ins. Co.*, 100 N. Y. 416; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 419; Bacon on Life Insurance, 411; *Brink* v. *G. M. A. Assn.*, 130 N. Y. 675.)

ANDREWS, Ch. J. The most serious question in this case arises on the construction of the writing signed by the assured on the 13th day of April, 1889. If it was merely a receipt it was open to explanation or contradiction, because a receipt is an admission merely, and not a contract. (*Ryan* v. *Ward*, 48 N. Y. 204.) But a receipt may embody a contract also, and when the written instrument has this double character, it is, so far as pertains to the contract, subject to the same rules of construction, and can be impeached in the same manner only, as other agreements in writing. Among the principles which apply in such cases is the familiar one that, in the

absence of fraud or mistake, or want or failure of considera-
tion, oral evidence is inadmissible to add to, contradict or vary
the written terms or the legal import of a written contract.
The defendant insists that the writing of April 13th, 1889,
was both a receipt and a contract; a receipt so far as it
acknowledged the payment of twenty-five dollars in satisfac-
tion of the claim for the injury sustained by the assured on
the 8th day of April, and a contract whereby he surrendered
and gave up his insurance and wholly terminated his relation
as a member or policyholder in the company. If this is the
necessary construction of the writing it would be difficult to
resist the conclusion that, when the second injury, of April .
27th, occurred, the policy was not in force. But the rule
which forbids the introduction of oral evidence to contradict
a written agreement is to be administered in harmony with
another rule, that where the alleged written agreement is
ambiguous or fairly capable of two constructions, the circum-
stances which led to and attended its execution, the situation
of the parties and the subject-matter may be shown and con-
sidered in aid of its interpretation. It is the contention of
the defendant that the insured surrendered the policy on the
13th of April, and that this is conclusively indicated by the
words in the receipt following the number of the policy, namely :
" Which is hereby surrendered." If this is the necessary con-
struction of the words, they state a fact which undeniably was
not true. The policy was not surrendered at that or any subse-
quent time, but remained in the possession of the assured until
his death. The words " which is hereby surrendered," if given
the broad meaning attached to them by the defendant, import
a present physical surrender of the policy itself, and this was
not done. If that had been intended the transaction was left
incomplete. But taking those words in connection with the
context, we think the fair and reasonable meaning of the
writing was that the policy was surrendered as to the claim,
which was the subject of the settlement, so that in respect to
the injury of April 8th there should be no further claim
against the defendant. It protected the company against

further liability for that injury, whatever might happen or however much the then existing symptoms might thereafter be aggravated. This construction, moreover, is the only one consistent with the justice of the transaction. The only thing the parties had in view was the settlement of the claim for the injury of April 8th. The terms of the settlement were agreed upon, and nothing had been said about a surrender of the policy. There was no reason why the assured should be required to give up the contract of insurance. The assessments had been paid, which kept the policy in force until June 9th. If meanwhile another injury should happen he would be protected. Nor was there any apparent reason why the company should desire to terminate the insurance. The risk, so far as appears, was a good one. Its only interest was to make a final and complete settlement of the claim for the injury of April 8th. It probably could have successfully resisted the claim as it then stood, under the strict language of the policy, but the agent stated in substance that it was for the interest of the company to be liberal in the adjustment of claims, and this was a reasonable motive for its action in conceding its liability. The receipt, as the evidence tends to show, was intended as a mere record of the verbal agreement, and of the payment made by the company. After the oral agreement had been consummated the agent produced a printed form, filled in the necessary descriptive particulars, and presented it to the assured for signature, and the assured signed it after the agent explained to him that the surrender of the policy was not important. It may be well, in conclusion, upon this point to repeat the language of the receipt: "Received from the Manufacturers' Accident Indemnity Co., of Geneva, N. Y., the sum of twenty-five dollars ($25), being in full satisfaction and final settlement of any and all claim I now have or may have against said company for loss resulting from injuries received on the 8th day of April, A. D. 1889, under my policy No. 12,157, which is hereby surrendered." The words "which is hereby surrendered," we hold may and ought to be construed as referring to the claim

describe l in the context, and to indicate that as to that, and that alone, the rights of the assured under the policy were surrendered. The rule applied to the construction of a release, that general words following words of special release may be restrained to the matter specially recited, confirms the construction we have given to the writing in question.

We think the court did not err to the prejudice of the defendant in charging that if the jury should find that the virulent matter which produced the blood poisoning was communicated to the wound coincident with its infliction, and the death was produced by the blood poisoning, it was a death within the policy. The policy provides that the insurance shall not extend " to any case except where the injury is the proximate and sole cause of the disability or death." There was evidence upon which the jury could find the fact submitted. There was medical testimony to the effect that the virus was probably on the umbrella, or whatever instrument it was which inflicted the wound; and the condition of the thumb and the bandaging afforded an inference that that was not a source of the virulent infection. All the evidence upon this point was submitted to the jury, including the statement of the assured in the notice of injury, and the jury having found the fact in favor of the plaintiff, the finding cannot now be disturbed. Upon the fact as found, the inoculation of the wound at the very time of its infliction was a part of the injury. Without the wound there would have been no inoculation, and so, also, without the inoculation the wound would not probably have been fatal. But it is impossible to separate the two in the practical construction of this condition in question. Both were contributing and co-existing causes of the death, set in motion and operating together from the same moment of time. (See *Fitton* v. *Accidental Death Ins. Co.*, 17 C. B. [N. S.] 122 ; *Smith* v. *Accident Ins. Co.*, L. R. [5 Exch.] 302.)

Nor do we think there was error in the ruling as to the condition requiring immediate notice to be given to the company

of an accident or injury. The notice given of the second injury, on the 2nd of May, was concededly in time, but it did not contain all the particulars specified in the condition. The company retained the notice and did not call for further particulars. The policy, after prescribing that immediate notice of an injury should be given, and specifying the particulars to be given, proceeds: "And failure to give such immediate notice, mailed within ten days from the happening of such accident, shall invalidate all claims under the certificate." Where a forfeiture is claimed for a non-observance of a condition in a policy of insurance, requiring some notice to be given, after a loss or liability has been incurred, a clear case must be made, and in case of doubt the condition is most strongly construed against the insurer. Looking at the clause under which the forfeiture is claimed in this case, it is evident that it was primarily intended to protect the company against delayed claims for indemnity, of which prompt notice had not been given. It is upon a failure to give such " immediate notice, mailed within ten days," that the forfeiture was to accrue. It would be a very harsh and unreasonable construction to apply this clause to every imperfection in a notice, which, although promptly given, omitted to state some particular embraced among those enumerated in the prior clause. We think the forfeiture clause did not apply to a case of such omission. The company could have demanded further particulars, but having omitted to do so, it waived any objection to the form or contents of the notice. The same view is applicable to the death notice. It was promptly given and was retained without objection.

We have examined the other questions argued upon the brief of the appellant, but find nothing in them which would justify a reversal of the judgment.

The judgment should be affirmed.

All concur, except MARTIN, J., not sitting.

Judgment affirmed.