THE CENTRAL ACCIDENT INSURANCE COMPANY

*v.*

ALVINE REMBE *et al.*

*Opinion filed February 21, 1906.*

1. INSURANCE—*rule where blood poisoning results from wound.*
Insurance covering the death of the insured caused by external
violence or accidental means extends to a case of death from blood
poisoning inoculated by an accidental external injury to the person
of the insured, without which the poisoning would not have ensued.

2. SAME—*what not included in exemption against death caused
by contact with "poisonous substance."* Exemption of an accident
insurance company from liability for death resulting from the "tak-
ing of poison or contact with poisonous substance" does not in-
clude a case where the insured, a physician, accidentally wounded
his finger in the attempt to uncork a bottle, the neck of which
broke, while attending a syphilitic patient, the virus from the pa-
tient entering the wound, causing fatal blood poisoning.

3. SAME—*physician's accident policy construed as to meaning
of word "operation."* A clause in an accident policy issued to a
physician and surgeon extending the insurance to "septic wounds,
caused by accident while performing any operation pertaining to
the business of the insured, the poison matter being injected into the
wound at the time of the accident," is not limited to surgical opera-
tions, but includes accidental wounds received when administering
or preparing to administer treatment pertaining to the business of
the insured.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Logan county; the Hon. G. W. PATTON, Judge, pre-
siding.

Appellees, as beneficiaries, began an action of assumpsit
in the circuit court of Logan county against the appellant to
recover upon a policy of insurance issued by it to Dr. Ed-
ward Rembe.

Dr. Rembe, in May, 1903, being a physician and surgeon
practicing his profession in the city and vicinity of Lincoln,
this State, was solicited by an agent of appellant to take an

accident policy in his company, which he consented to do. The policy tendered him contained the following clause: "This policy does not cover * * * death * * * resulting wholly or partially from any of the following causes: * * * voluntary or involuntary taking of poison or contact with poisoned substance." He declined to accept it, and insisted upon an additional clause to cover blood poisoning or septicæmia. The policy was returned to the company and a slip attached thereto as follows: "Policy No. 75,719 is hereby extended to cover that class of injuries known as septic wounds, caused by accident while performing any operation pertaining to the business of the insured, the poison matter being injected into the wound at the time of the accident and resulting in disability or death under the conditions of the policy." The policy, with the slip attached, was again tendered to the insured, accepted by him and the premium paid. On November 25, 1903, the insured, in the course of his practice as a physician, was treating a patient afflicted with syphilis in a virulent form, of several weeks' duration. During the treatment in his office, while in the act of preparing medicine to be administered to the patient, he attempted to remove the cork from a glass bottle and the top or neck of it was accidentally broken, cutting a small wound in one of the fingers of his right hand. He immediately dressed the cut, binding it up in gauze cloth and rubber tissue. Upon the afternoon of the same day, and again upon the next day, he treated a child suffering from an abscess in the ear, which was discharging pus. On the next morning after breaking the bottle the wound on his finger began to pain him and swell, and on the second day a well-defined case of septicæmia, or blood poisoning, manifested itself. Skilled physicians were called, who by operation and other means made every effort to save his life, but failed, and on December 14 he died. The appellant refused to pay the policy, and upon the trial in the circuit court judgment was rendered in favor of the plaintiffs for the full amount thereof, $5000. That

judgment having been affirmed by the Appellate Court, this further appeal is prosecuted.

KING & MILLER, for appellant:

The phrase "proximate cause," as used in accident insurance policies, has been held to mean that cause which directly produces the effect, as distinguished from the remote cause,—the cause which sets in motion a train of events which brings about a result without the intervention of any force operating and working from a new and independent source. But this does not necessarily mean the cause or condition nearest in time or place to the result. 1 Cyc. 273; *Miner* v. *Insurance Co.* 3 Ohio Dec. 289.

If septicæmia, in this case, was not a natural result of the injury, then the cut was not the proximate cause of death. *Delaney* v. *Accident Club,* 63 L. R. A. 605; *Commercial Travelers* v. *Smith,* 40 id. 365.

If the poison was on the bottle and was injected into the wound coincident with the injury, then the injury and inoculation were separate and distinct causes though uniting to form the proximate cause, one of the two causes being contact with poison, and appellees cannot recover under the first count. *Martin* v. *Indemnity Co.* 45 N. E. Rep. 379.

Where the terms of an agreement are in any sense doubtful or uncertain, and the parties have by their own conduct placed a construction upon it which is reasonable, such construction will be adopted by the court. *Burgess* v. *Badger,* 124 Ill. 288; *Purcell Co.* v. *Sage,* 200 id. 342.

Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous their terms are to be taken in their plain, ordinary and popular sense. *McGlother* v. *Accident Co.* 89 Fed. Rep. 685; *Schuermann* v. *Insurance Co.* 161 Ill. 437; *Mowing Machine Co.* v. *Trixler,* 97 Ill. App. 170; *Insurance Co.* v.

*Coos Co.* 151 U. S. 452; *Kiesel Co.* v. *Sun Ins. Office,* 88 Fed. Rep. 243.

An instruction which purports to tell the jury under what conditions a recovery may be had must give all the conditions essential to the right of recovery. ⸱ *Athletic Ass.* v. *Eddy Elec. Manf. Co.* 77 Ill. App. 204; *Railroad Co.* v. *Griffin,* 68 Ill. 499; *Railway Co.* v. *Britz,* 72 id. 256; *Evans* v. *George,* 80 id. 51; *Chicago* v. *Schmidt,* 107 id. 186; *Craig* v. *Miller,* 133 id. 300; *Partridge* v. *Cutler,* 168 id. 504; *Railway Co.* v. *Cleveland,* 92 Ill. App. 308.

For cases holding insurer not liable because of ·exception exempting insurer from liability in case of death from contact with poisonous substance, see *Meehan* v. *Accident Co.* 68 N. Y. Supp. 821; *McGlother* v. *Accident Co.* 89 Fed. Rep. 685; *Kasten* v. *Casualty Co.* 40 L. R. A. 651; *Insurance Co.* v. *Robinson,* 61 id. 145.

BLINN & COVEY, for appellees:

A policy of insurance should be construed most strongly against the insurer. *Accident Society* v. *Ralstin,* 101 Ill. App. 192; *Accident Ass.* v. *Kilsey,* 46 id. 371; *Healey* v. *Accident Ass.* 133 Ill. 556; *Frohard case,* 134 id. 228.

If a clause of an insurance policy is susceptible of two interpretations, that most favorable to the assured will be adopted in order to indemnify him for the loss sustained. *Insurance Co.* v. *Hardesty,* 182 Ill. 39; *Healey* v. *Accident Ass.* 133 id. 556; *Schroeder* v. *Insurance Co.* 109 id. 157.

The language of an insurance policy, particularly where it seeks to limit the liability of the insurer, is to be strictly construed against the company. *Insurance Co.* v. *Building Ass.* 175 Ill. 115; *Insurance Co.* v. *Robinson,* 64 id. 265. ·

A condition that would defeat an insurance policy must be expressed or so clearly implied that it cannot be misconstrued. Policies must be liberally construed in favor of the insured, so as not to defeat, without plain necessity, a claim for indemnity; and where there is a doubt or uncertainty

in the terms of the policy or when they are susceptible of two interpretations, that which will sustain the claim of the insured must be adopted in preference to one that would release the company. *Insurance Co.* v. *Schultz,* 94 Ill. 156; *Fire Ass.* v. *Short,* 100 Ill. App. 553.

Where it appears from the evidence that the insured accidentally cut his finger, making a visible wound, and that blood poisoning ensued, which finally terminated in the death of the insured, the prime cause of his death refers to the original cut on the finger, and septicæmia is an incident, only. *Martin* v. *Indemnity Co.* 45 N. E. Rep. 379; *Commercial Travelers* v. *Smith,* 40 L. R. A. 365; *Freeman* v. *Accident Ass.* 17 id. 753; *Insurance Co.* v. *Murray,* 16 Col. 296; *Delaney* v. *Accident Club,* 63 id. 605; Niblack on Benefit Societies and Accident Insurance, 768.

A clause in a policy exempting the company from liability from insured coming in contact with poisonous substances does not bar a recovery where the insured cut his finger and blood poisoning ensued, which terminated in his death. *Omberg* v. *Accident Ass.* 40 N. W. Rep. 909.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The defendant made timely and proper motions to have the jury instructed to find it not guilty, but the motions were overruled and exceptions taken. That ruling is assigned as error; also that the trial court erred in the giving of the first and second instructions on behalf of the plaintiffs. Most of the brief and argument on behalf of the appellant is devoted to the alleged error in giving those instructions, although the refusal to give the peremptory instruction is urged as reversible error and may be properly considered first, for the reason that if there was error in that regard other questions are immaterial.

The declaration contains two counts. The first declares upon the policy as it was first tendered to the assured without the attached slip, and avers that while the deceased was

in pursuit of his avocation as a physician and surgeon, and while undertaking to remove the cork from a bottle, his finger was injured, and the wound caused blood poisoning, resulting in his death. The second declares upon the policy as modified by the attached slip, and avers the injury from the broken bottle, and that poison matter from the patient suffering from syphilis became injected into the wound at the time of the accident, resulting in death.

The evidence is to the effect that on November 25, 1903, the date of the injury to the finger, Dr. Rembe, the insured, was a middle-aged man of strong physique, enjoying perfect health; that he was on that day called upon to treat a patient suffering with syphilis, and while preparing medicine for him and attempting to remove the cork from a bottle he accidently broke the neck of the bottle, the pieces of glass cutting a small wound in the middle finger of his right hand; that he immediately dressed the wound and bandaged it, but the next morning the hand began to swell, causing him great pain, and finally resulted in his death from septicæmia, or blood poisoning, three weeks later. These facts are not disputed, and they not only tend to prove, but establish, the fact that the death of the insured resulted from the accidental injury to his finger, and we are unable to see how it can be seriously contended that under these facts and the law applicable to the case his beneficiaries are not entitled to recover under the first count of their declaration. The policy without the attached slip provided that upon the death of the insured caused by external violence and accidental means the company would pay to the beneficiaries therein named, if surviving, the sum of $5000. The contention of the defendant below is, that the death was not caused by the wound alone, but by blood poisoning, and therefore the company is not liable,—in other words, that the injury was not the proximate cause of the death of the insured. The cause of the death, as we understand it, was the wound in the finger, by means of which blood poisoning intervened. Without

the accidental wounding of the finger blood poisoning would not have ensued, and therefore that disease was only incidental to the wound. If we turn to the evidence of the physicians who testified in the case, we find that they, with one accord, agreed that under the facts and circumstances shown the septicæmia, or blood poisoning, would not have been produced but for the incision or wound in the finger, into which the poisonous germs entered and contaminated the blood. At least their evidence strongly tends to prove that fact, and for the purposes of this decision that is all that is necessary.

In *Martin* v. *Manufacturers' Accident Indemnity Co.* 45 N. E. Rep. 379, the insured accidentally injured the second finger of his right hand in some way not clearly explained, but probably from the wires of an umbrella which he was attempting to raise, and the injury was followed by blood poisoning, of which he afterwards died. Prior to the injury of the finger he had crushed the thumb of his left hand, and one of the questions in the case was whether the wound of the finger was the only, proximate and sole cause of the death of the insured,—that is, whether or not the accident and inoculation of the wound were co-incident, or whether the inoculation occurred after the injury, from suppuration of the wound on the thumb of the left hand. The question whether the blood poisoning was caused by matter from the wound on the thumb or was immediately developed from the wound on the finger, by inoculation or otherwise, at the very time of that injury, was litigated on the trial, and medical experts were called by each side to testify on the subject. The court charged the jury, in substance, that if the blood poisoning was caused by contact of the wound, or from matter communicated from the thumb after the injury to the finger, the plaintiff could not recover. The court of appeals said: "We think the court did not err to the prejudice of the defendant in charging that if the jury should find that the virulent matter which produced the blood poi-

soning was communicated to the wound co-incident with its infliction, and the death was produced by the blood poisoning, it was a death within the policy. The policy provides that the insurance shall not extend 'to any case except where the injury is the proximate and sole cause of the disability or death.' * * * There was medical testimony to the effect that the virus was probably on the umbrella, or whatever instrument it was which inflicted the wound; and the condition of the thumb and the bandaging afforded an inference that that was not the source of the virulent infection. All the evidence upon this point was submitted to the jury, including the statement of the assured in the notice of injury, and the jury having found the fact in favor of the plaintiff, the finding cannot now be disturbed. Upon the fact as found, the inoculation of the wound at the very time of its infliction was a part of the injury and the immediate cause of the death. Without the wound there would have been no inoculation, and so, without the inoculation the wound would not, probably, have been fatal. But it is impossible to separate the two in the practical construction of the conditions in question. Both were contributing and co-existing causes of the death, set in motion and operating together from the same moment of time."

In the case of *Western Commercial Travelers* v. *Smith,* 40 L. R. A. 365, the accidental abrasion of the skin of one of the toes of the insured resulted in blood poisoning and death. The United States Circuit Court of Appeals in deciding the case said: "It is earnestly contended, however, that the death was not caused by bodily injuries effected by external, violent and accidental means, because the disease of blood poisoning was the cause and the abrasion of the skin of the toe was only the occasion,—the locality in which the disease first appeared. * * * If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent and accidental

means which produced the bodily injury, the association was equally liable to pay the indemnity. In such case the disease is an effect of the accident; the incidental means produced and used by the original moving cause to bring about its fatal effect; a mere link in the chain of causation between the accident and the death." To the same effect are the cases of *Omberg* v. *United States Mutual Accident Ass.* 40 S. W. Rep. 909; *Freeman* v. *Mercantile Mutual Accident Ass.* 17 L. R. A. 753; *Travelers' Ins. Co.* v. *Murray,* 16 Col. 296; *Young* v. *Accident Ins. Co.* 6 id. 1.

In the case of *Delaney* v. *Modern Accident Club,* 63 L. R. A. 603, it was said: "The simple question is whether the death of Delaney resulted through natural causes, without the interposition of a new and independent cause from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound and not of an independent cause, is properly attributed to the wound, and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous."

The doctrine announced by all of these cases is tersely stated by Niblack on Benefit Societies and Accident Insurance, (p. 768,) in which he says: "If the inoculation occurred at the time the wound was made and was a part of the accident, the accident was the sole and proximate cause of the death, though blood poisoning ensued."

The claim, not seriously insisted upon, that the inoculation was caused by the pus discharged from the child's ear is wholly unsupported by the evidence.

The policy in this case, without the slip, exempted the company from liability if death resulted from the "taking of poison or contact with poisonous substance," and it is contended by counsel for appellant that the death of the insured was caused by the wound coming in contact with virus from the syphilitic patient, either upon the hands of the doc-

tor or upon the neck of the bottle which was broken. The rule is familiar that policies of insurance, especially where they seek to limit the liability of the insurer, must be construed most strongly against the company issuing the policy and whose language it is. We do not think, under that rule, the language of the policy can be given the meaning here attempted to be put upon it. If poisonous germs entered the wound, causing blood poisoning, that wound would not be within the fair meaning of the policy, "coming in contact with poisonous substance," causing death. Even if the germs were a poisonous substance within the meaning of the policy, those germs, according to the testimony, would have produced no injurious effect but for the wound in the finger. They only became poisonous when allowed to mingle with the blood.

We are not to lose sight of the fact that by the verdict of the jury, the judgment of the circuit court and the affirmance by the Appellate Court every controverted fact in the case must be treated as conclusively settled in favor of the plaintiffs and against the defendant. It seems to us clear that under the evidence the judgment was fully authorized under the first count of the declaration.

We are also satisfied that the evidence in the case justified the verdict of the jury and the judgment of the circuit court under the second count of the declaration. The slip attached to the policy, upon which this count is based, was added because the insured refused to accept the insurance without it. Its language, which, as already said, is strictly the language of the company, is, that the policy shall be "extended to cover that class of injuries known as septic wounds, caused by accident while performing any operation pertaining to the business of the insured, the poison matter being injected into the wound at the time of the accident and resulting in disability or death under the conditions of the policy." It seems to be contended on behalf of the appellant that this provision only covers cases where a surgeon or phy-

sician is in the act of performing an operation or administering treatment upon a patient and in the act meets with some accident which causes a wound, and it is said that the wound in this case was not inflicted while the doctor was so engaged in performing an operation or administering treatment to the patient. In our opinion this is too narrow a construction of the language of the policy. Applying the rule of construction already stated, (*Healey* v. *Mutual Accident Ass.* 133 Ill. 556; *Queen Ins. Co.* v. *Dearborn Savings Ass.* 175 id. 115; *Forest City Ins. Co.* v. *Hardesty,* 182 id. 39;) suppose the insured had cut his finger by accident while preparing instruments with which to perform a surgical operation, or if, after the operation, in disinfecting the instrument used he had accidentally wounded himself and blood poisoning had in either case intervened, would it be claimed there was no right of recovery under the conditions of this policy? We hardly think it would be seriously so contended. The clause is, "caused by accident while performing any operation pertaining to the business of the insured." His business was both that of a surgeon and physician. His treatment of the patient was a continuing service, and should not be limited to any particular act in such treatment. The preparation of medicine to be taken internally at the very time the patient was in his office, or subsequently, according to directions, was, we think, administering treatment pertaining to the business of the insured, within the meaning of this clause of the policy.

Objection is made to the first instruction given on behalf of the plaintiffs, which was applicable to this count. It told the jury that if it found that the insured was a practicing physician and surgeon, and while treating a patient cut his finger on a broken bottle, making a visible wound commonly known as a septic wound, by means whereof poison matter was injected into the wound at the time of the accident, from which a disease commonly known as blood poisoning intervened, from the effect whereof and within ninety days said

220 – 11

insured died, then such injuries were within the terms of the accident policy read in evidence and would create a liability in favor of the plaintiffs for the amount stipulated in the policy. The language of the policy is, that the company shall be liable for disability or death by external violence and accidental means, which shall, "independently of all other causes," etc. The objection to the instruction is, that it does not use the word "operation" in the sense in which it is used in the slip attached to the policy, the contention being that it was used in its strictest sense as applied to surgery. For the reason already given we do not think this contention can be maintained. "Operation" means treatment pertaining to the business of the insured.

Complaint is also made of the giving of the second instruction, which is applicable only to the first count. It told the jury that if they found, from a preponderance of the evidence, that the deceased, during the lifetime of the policy, accidentally cut his finger, making a visible wound, from the effect of which, within ninety days, he died, then the company was liable. The policy insured the deceased against accident and death from external, violent and accidental means, "independently of all other causes," and the objection to this instruction is that it does not use the quoted words. We do not understand that it was necessary to negative the language used in the policy in the instruction. If the accidental cutting of the finger caused the death, then, under the proof in this case, it was clearly independent of all other causes and there was no reversible error in the instruction. Moreover, the jury were instructed, at the instance of the defendant, that unless the plaintiffs established, by a preponderance of the evidence, that the death charged in the declaration was by accidental, external and violent means *solely,* then they should find for the defendant.

We think this record is substantially free from error, and the judgment of the Appellate Court will accordingly be affirmed.                                    *Judgment affirmed.*