LENA SIMPKINS, as Executrix of the Will of H. E. SIMPKINS, Deceased, Appellee, v. THE HAWKEYE COMMERCIAL MEN'S ASSOCIATION, Appellant.

Accident insurance: CAUSE OF DEATH: SUFFICIENCY OF NOTICE. Proof
1 of death under an accident policy indemnifying against death by external, violent and accidental means, which showed that death resulted from poison introduced into the system by an embalming needle, sufficiently established the cause of death, and that it was by external, violent and accidental means.

Same: EVIDENCE. Strictly speaking there can be no accident causing
2 death, within the terms of a contract of accident insurance requiring written notice of the accident causing death within a specified time after the accident, so long as the insured lives; and that requirement is satisfied by notice in the proofs of death furnished shortly after it occurred. But in the instant case a notice of the accident was given within the required time, and

although the facts did not show a waiver of notice, they were sufficient to warrant an inference of the fact of notice.

**Accidental injury and death:** EVIDENCE. It is also held that the evidence is sufficient to show an accidental injury and the accidental nature of the death of the insured.

**Same:** EXEMPTION FROM LIABILITY: CONTACT WITH POISONOUS SUBSTANCES. Where, as in this case, an embalmer accidentally injured his hand with the point of an embalming needle, which was followed by blood poison resulting in death, the death was not from contact with poisonous substances within the terms of the policy exempting the insurer from liability in such cases.

**Insurance contract:** CONSTRUCTION. Where any of the provisions of a contract of insurance are open to different constructions the one most favorable to the insured will be adopted by the court.

*Appeal from Marshall District Court.*—HON. C. B. BRADSHAW, Judge.

TUESDAY MAY 10, 1910.

ACTION to enforce collection of a policy or certificate of accident insurance. Judgment for plaintiff as prayed, and defendant appeals. *Affirmed.*

*Bradford & Johnson,* for appellant.

*Cummings & Mote,* for appellee.

WEAVER, J.—The defendant is a mutual benefit association organized for the purpose of insuring its members, upon certain conditions, against personal injury and death from accidental causes. On July 9, 1906, H. E. Simpkins, an undertaker by occupation, residing and doing business at Marshalltown, Iowa, where the defendant's principal office is located, was duly admitted to membership in the association, and remained a member thereof in good standing until his death on February 2, 1907.

Among the benefits and indemnities assured to a member in good standing in said association its by-laws provide the following: Article 5, section 2: "Whenever a member in good standing shall, through external, violent, and accidental means, receive bodily injuries which shall, independently of all other causes, result in death within twenty-six weeks from said accident, the beneficiary named in his application for membership, or his heirs, if no beneficiary is named therein, shall be paid the proceeds of one assessment of two dollars upon each member in good standing, but in no case shall such payment exceed the sum of five thousand dollars, which shall be in full satisfaction of all liability to the said deceased member, his beneficiary, heirs or legal representatives." It is the claim of plaintiff that on or about January 9, 1907, said H. E. Simpkins, while engaged in the line of his business in embalming the body of a deceased person, accidentally wounded or punctured the palm of his hand with the point of an embalming needle or trocar, which induced or caused blood poisoning, from which death ensued some three or four weeks later. It is further alleged that within fifteen days from the date of such injury written notice thereof was given to said association, and that within sixty days of the decease of said member notice thereof with proof of the death was also duly served. It is also alleged that at the date of the death of said Simpkins there were in said association one thousand seven hundred and eighty members, but it has wholly failed to pay the amount of benefits to which the estate of the deceased is entitled, and has failed, neglected, and refused to levy any assessment upon its said membership for the purpose of paying such claim. A decree is asked ordering such assessment to be made and payment of the proceeds to the plaintiff. The answer of the defendant admits the membership of Simpkins in good standing at the date of his death, but denies all the other material

allegations of the petition. It also alleges that under one
of its by-laws, when a member dies from natural causes,
there shall become due to his beneficiary or his estate the
sum of four cents per capita of the entire membership,
and that by the terms of this provision there became due
to the plaintiff as executrix the sum of $71.60, which sum
defendant tendered to plaintiff, who refused to receive it.
Said tender is also brought into court and deposited for
the plaintiff's acceptance and use. While numerous errors
are assigned, counsel for appellant condense and confine
the propositions relied upon under three heads, which we
shall briefly consider in the order in which they are stated
in the printed brief.

I. It is said that no notice was given the defendant
of the alleged accidental nature of Simpkins' death. The
record does not bear out the objection. Simpkins died
on February 2, 1907. On February 4,
1907, proofs of death made out upon the
blanks usually employed for that purpose
were prepared by the attending physician
and others, and furnished the defendant. In the physi-
cian's report it was stated in unequivocal language that
death was caused by septic poisoning introduced by a
needle, and that there was no remote cause of such fatal
result. But counsel say this was insufficient, because the
physician does not state specifically how the injury was
inflicted, or that it was accidental. This is demanding
a much higher degree of particularity than reason or the
law requires. It has often been held that the notice re-
quired in such cases need not incorporate a minute and
detailed history of the case. In *Correll v. Accident So-
ciety,* 139 Iowa, 40, we said that the requirement in cases
of this character "is that the fact of death be stated, and,
as far as known at the time, the cause thereof." So, too,
where "full particulars" are demanded by the contract, it
does not mean necessarily a complete recitation of all the

1. Accident in-
surance: cause
of death:
sufficiency
of notice.

facts, but enough to enable the insurer to intelligently pursue the inquiry if it desires to do so. Here the alleged cause of the death was clearly stated and attributed to a bodily injury caused by external and violent means. We think it also sufficiently conveys the information that such injury was accidental. If the proof or notice had shown that deceased had died of a knife wound or a gun shot wound, it would not be necessary to negative the idea that the injury was of a voluntary or suicidal character. The natural inference from such statement would be that such injury and death were accidental.

In this connection reliance is also placed on a clause of the defendant's by-laws, which reads as follows: "Provided, further, that the association shall in no event be liable to any beneficiary, heir or legal representative for any claim arising from the death of a member as aforesaid, unless such member, his beneficiary, heirs or legal representative for any claim arising from the death of a member as aforesaid, give written notice to the Secretary of the Association of the accident causing the death, within fifteen days after the happening of said accident, which notice shall state the full name of the member and contain full particulars of such accident, and shall also within sixty days from the time of such death furnish the Board of Directors with affirmative proof in writing of the death, and of its being the proximate result of external and accidental means." It is insisted that there was no compliance with this condition, and hence there can be no recovery. Strictly speaking, there can be no such thing as an "accident causing death," so long as the injured person lives, and in the nature of things "notice of the accident causing the death" is not possible until death has supervened, and, upon this construction, the provision above quoted would be satisfied by the information contained in the proofs of loss to which we have already called attention.

2. SAME: evidence.

But without resorting to such construction, and giving to the by-law the effect which counsel ascribe to it, we still think the record justifies the holding of the trial court. There is evidence that after the injury to Simpkins, and while he was sick therefrom, his son-in-law and partner in business prepared a written notice of such injury and delivered it to the defendant before the expiration of fifteen days from the date of the accident. This is not denied by any witness on the part of defendant, though its secretary, who appears to be its active officer, was on the witness stand, and had opportunity to do so had the fact justified it. Apparently in response to this notice the medical examiner of the association visited the injured man, saw the wound on his hand, and diagnosed the case as one of blood poisoning, and made report of the conditions discovered by him. Still further, when death occurred and proofs of plaintiff's claim were submitted, her attorney called at defendant's office, and in an interview with the secretary, who, as its counsel say, was the person "left in charge of the business," the latter based the defendant's refusal to pay not upon the failure to give notice, but upon a clause of the by-laws which excepted from the insurance injuries arising from "contact with poisonous substances." If, as argued, none of these things operate as a waiver of the necessity of notice, they are at least legitimate circumstances from which the fact of notice may be fairly inferred. The objection to the sufficiency of the notice can not be sustained.

II. The second point made by the appellant is that the plaintiff's action was prematurely begun. This is but another form in which advantage is sought to be taken of the alleged failure to prove the service of notice of the accident and death; and, as we have already held that objection not well taken, we need not dwell longer upon that proposition.

III. The remaining objection made is to the suffi-

ciency of the proof of accidental injury to the deceased and the accidental nature of his death. Some of the es-

3. ACCIDENTAL INJURY AND DEATH: evidence. — sential features of this branch of the case have already been the subject of our consideration, and we shall not repeat what has been said thereon. There is direct and undisputed proof of an external wound on the hand of deceased and that blood poisoning therefrom caused his death. There is also shown a combination of circumstances clearly indicating that this wound had been received in embalming a dead body. As deceased became ill from such wound almost immediately thereafter and delirium and death soon followed, direct evidence concerning the facts immediately surrounding his injury can not be obtained, and, to ascertain the truth, we have to resort to the best evidence available. It is shown that deceased attended to the case of embalming on January 9, 1907, and on his return from that operation spoke of the injury received, and showed his injured hand. It is also shown by witnesses who were acquainted with the instrument that the shape and appearance of the wound were such as could have been produced by the point of an embalming needle or trocar. The wound itself was visible, tangible evidence that it was an effect produced by external violence, and the only fair inference drawn from the proved circumstances is that it was accidental. Indeed, in the absence of evidence to the contrary, the accidental character of a physical injury will be presumed. See *Jones v. Association,* 92 Iowa, 660, and cases there cited. The evidence as a whole is sufficient to satisfy the reasonable mind that such was the nature of the injury and the cause of the death. More is not required. The insurer can not be presumed to have provided for the performance of an impossibility as a condition of the promised indemnity. *Eggleston v. Insurance Co.,* 65 Iowa, 316; *Norton v. Insurance Co.,* 7 Cow. (N. Y.) 649; *Lawrence v. Insurance*

Co., 11 Johns. (N. Y.) 260; *Trippe v. Provident Fund,* 140 N. Y. 23 (35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529); *Insurance Co. v. Boykin,* 79 U. S. 433 (20 L. Ed. 442); *McElroy v. Insurance Co.,* 88 Md. 137 (41 Atl. 112, 71 Am. St. Rep. 400).

But counsel suggest that, regardless of these considerations and assuming that deceased came to his death in the manner claimed by plaintiff, the appellant is relieved from liability because of a clause in the contract of insurance which excepts therefrom injuries arising "from the intentional taking of poison and from contact with poisonous substances." It appears to us very clear that the injury to the deceased in this case does not come within the excepted class here mentioned. A condition of this general nature is not unusual in accident policies, and has been the subject of consideration by the courts where death has resulted from blood poisoning following a wound, and in each instance it has been held not to be an injury "from contact with poisonous substances" within the meaning of the contract; it being the theory that death in such cases is in a legal sense the result of the wound, and that the infection of such wound is a mere incident to the original injury. *Ormberg v. Association,* 101 Ky. 303 (40 S. W. 909, 72 Am. St. Rep. 413); *Martin v. Indemnity,* 151 N. Y. 94 (45 N. E. 377; *Insurance Co. v. Rembe,* 220 Ill. 151 (77 N. E. 123, 5 L. R. A. (N. S.) 933, 110 Am. St. Rep. 235); *Cary v. Accident Co.,* 127 Wis. 67 (106 N. W. 1055, 5 L. R. A. (N. S.) 926, 115 Am. St. Rep. 997). Construing the words "injury from contact with poisonous substances," the Illinois court has said: "The rule is familiar that policies of insurance where they seek to limit the liability of the insurer must be construed against the company issuing the policy whose language it is. We do not think under that rule the language of the policy can be given the meaning here at-

*4. SAME: exemption from liability: contact with poisonous substances.*

tempted to be put upon it. If poisonous germs entered the wound causing blood poisoning, that would not be within the fair meaning of the policy, 'coming in contact with poisonous substances' causing death. Even if the germs were a poisonous substance within the meaning of the policy, those germs according to the testimony would have produced no poisonous effect but for the wound on the finger. They only became poisonous when mingled with the blood." *Insurance Co. v. Rembe, supra.* See, also, as announcing the same principle, *Jenkins v. Association,* 147 Iowa, 199; *Delaney v. Accident Club,* 121 Iowa, 528.

Counsel for appellant further say they may admit, for the sake of the argument, that the contract in suit as construed by them is a "harsh and difficult" one for the insured person, but insist that, even so, it is

5. INSURANCE CONTRACT: construction.

a lawful agreement, and therefore is one which the courts are bound to enforce. This may be a correct statement of the law as far as it goes, but it is settled by authorities and precedents too numerous to mention that, conceding the lawfulness of a given contract of insurance, if the language of any of its provisions is fairly open to different constructions, the one will be accepted which is most favorable to the insured. And we may add that there is such a fortunate if not providential flexibility and richness of meaning in words of the English language that the courts are not often seriously embarrassed in minimizing if not wholly neutralizing any apparent injustice of this nature.

Other matters mentioned in argument are sufficiently disposed of by the conclusions already announced. There is no reversible error in the record, and the judgment of the district court is *affirmed.*