THOMAS M. BOLTON, Respondent, v. INTER-OCEAN LIFE AND CASUALTY CO., Appellant.

Kansas City Court of Appeals, February 1, 1915.

1. INSURANCE: Health and Accident: Breach of Warranty in Policy: Jury Question. One of the defenses to a suit on a policy of health insurance was that plaintiff had given a false warranty as to his health at, and within five years prior to, the issuance of the policy. The court sitting as a jury found for plaintiff and no findings of fact or declarations of law were asked or given. *Held*, that since there was no conclusive evidence of any such breach of warranty, the appellate court. cannot as a matter of law declare a forfeiture of the policy on the ground of false or breached warranty. Plaintiff did not admit same, and the diseases shown to have existed afterward were not such as must have necessarily existed prior to the issuance of the policy.

2. ———: Notice of Disability: Waiver. Where the insurer settled a claim with insured and waived notice, and, upon. receiving notice of a second claim given after the time specified in the policy, wrote the insured that it was as much his duty to give timely notice as it was to pay premiums and to please remember to give timely notice in the future, but sent the blanks for proof of loss, and, when proof was returned considered the case on its merits and rejected the claim solely

on other grounds, and in addition to this, there was evidence that the company did not desire to lightly alienate insurer's good will, all such facts and circumstances furnished sufficient grounds for an inference to be drawn therefrom that the company intended to waive, and did waive, failure to give timely notice.

3. ———: Settlement for Former Disability: Release. Prior to the sickness on which the present claim was based, plaintiff had an illness for which he presented a claim and was paid in accordance with the terms of the policy. The receipt for this payment purported to release the company from all future liability for the same disease. There was no reduction of premiums on this account. *Held*, that there was no consideration for such release.

4. ———: ———: ———: Splitting, Cause of Action. There was no splitting of plaintiff's cause of action, since there were different disabilities giving rise to different claims or causes of action, although they were produced by two attacks of the same disease.

5. ———: Evidence: Family Physician: Privilege. Where plaintiff had sent the statement of his family physician, in reference to his illness, to the company as a part of his proofs, this was a waiver of his right to object to such physician testifying as to such attack of illness.

6. ———: ———: Exclusion of. Where the only purpose in offering the testimony of a witness was stated to be to prove a certain fact, which fact the plaintiff had already admitted, the exclusion of such testimony was not erroneous.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris*, Judge.

AFFIRMED.

*Cave & Eversole* for appellant.

(1) The court erred in finding for plaintiff, as the verdict is against the law and weight of the evidence as applied to defendant's second defense (failure to give timely notice). Aetna Life Insurance Co. v. Fitzgerald, 165 Ind. 317; Craig v. United States Health & Accident Insurance Co., 80 South Carolina, 151; Meech v. Nat. Ac. Soc., 63 N. Y. Sup. 1008. (2)

The court erred in finding for plaintiff, as the verdict is against the law and weight of the evidence as applied to defendant's third defense (release). Wood v. Mass. Mutual Accident Ass'n, 151 N. Y. 94; Conroy v. Equitable Accident Co., 21 R. I. 467; Clanton v. Travelers Protective Ass'n., 101 Mo. App. 312. (3) The court erred in refusing to permit witness, Dr. R. N. Crews, to testify concerning facts relative to plaintiff's physical condition in June, 1913, and contained in his report to defendant, made at plaintiff's request, in said month of June, 1913. Elliott v. Kansas City, 198 Mo. 593.

*J. R. Baker* for respondent.

(1) A jury having been waived by both parties and the cause having been tried by the court and no declarations of law having been asked, given or refused by either party, the judgment of the lower court will stand if there is any substantial evidence to support it. Lumber Company v. Lumber Company, 134 Mo. App. 316; Home Savings Bank v. Fisk, 135 Mo. App. 8. (2) The court did not err in finding against the defendant on its second defense, namely, failure to give timely notice. 1 Cyc. p. 278; 19 Cyc. pp. 865, 967; Brashear v. Patriots, 161 Mo. App. 566; Crenshaw v. Insurance Company, 71 Mo. App. 42; Myers v. Casualty Company, 123 Mo. App. 682; McFarland v. Accident Association, 124 Mo. 204. (3) The court did not err in finding against the defendant on its third defense, namely, release. Cunningham v. Surety Company, 82 Mo. App. 607; Graham v. Casualty Company, 120 Mo. App. 671; Mogan v. Railroad, 3 Mo. App. 721.

TRIMBLE, J.—This is an action upon the health feature of a policy of accident and health insurance. It provided for the payment of a monthly indemnity

for disability from illness of $80, and at that rate for any proportionate part of a month for the number of consecutive days, not exceeding six months, that the insured by reason of such illness, should be necessarily and continuously confined within the house, and therein regularly visited by a legally qualified physician.

The policy was issued April 7, 1913. The insured was ill, within the terms of the policy, from July 10, 1913, to September 25, 1913, a period of two-and-one-half months.

The policy made the application a part of the contract, and was based upon the truth of certain statements made as warranties therein to the effect that insured was in sound bodily health and had not received medical attention during the five years preceding the issuance of the policy, and had never had, during said five years, any trouble from gall stones or bladder disease. It also provided that written notice of any illness must be given to the company at its home office, or to the local agent in the town of insured's residence, within ten days from the date of beginning of disability from illness; and if the insured failed to comply strictly with said notice requirements then all rights under the policy should be forfeited.

The answer pleaded a breach of the two warranties above stated by alleging that for weeks and months prior to his application, and within five years prior thereto, insured was not in sound bodily health but was suffering from a disease of the bladder or disease of gall stones and under the care of a physician for those bodily illnesses. It also pleaded a failure to give written notice within ten days from the date of the beginning of disability. Lastly, the answer pleaded a release from all liability on the policy for all disability which might arise in the future or had

arisen in the past from all diseases of the gall bladder or any of the digestive organs.

The reply denied generally, and then pleaded that even if it were true that the said warranties were breached, the defendant had waived same by accepting. and receiving the full monthly premiums on said policy after knowledge of the fact that insured was afflicted with said diseases and did not cancel or undertake to cancel the policy until after claim for the illness now in issue was made, and is now estopped from setting up a breach of warranty in the case. The reply to the second defense namely, failure to give notice within ten days, was likewise a general denial, and a plea that even if the facts were true as set out in said second defense, defendant waived all defense it might have had by reason thereof, but had denied all liability whatever under the policy on the ground of the breaches of warranty aforesaid. The third defense, that of a release, was likewise denied generally, and the plea was made that the pretended release was without consideration and that after the execution of the alleged release the defendant continued to exact of, accept, and receive, the full amount of premiums designated and agreed upon in the policy, and thereby waived said defense of release if it had otherwise constituted a defense.

The case was tried without a jury and the court found for plaintiff in the sum. of $200, which is at the rate of $80 per month for two-and-one-half months, the rate provided in the policy for total disability. Defendant has appealed.

With reference to the first defense, that of a breach of the warranties that insured had not within five years prior to the date of the policy been disabled or received medical or surgical attention, and had not had and was not suffering with gall stones or bladder trouble, we do not think there was conclusive evidence

of any such breach so as to justify us in declaring a forfeiture as a matter of law. At most it was a question of fact for the court sitting as a jury to determine, and that tribunal having found against defendant upon that issue, we must accept that finding as true. Plaintiff did not admit having such diseases at or prior to the time of the issuance of the policy? There was no evidence showing that the gall stone and bladder trouble was chronic, or of long continued duration. Indeed there was evidence in the report of the physician concerning the sickness sued for, that it was not. Nor was there evidence that these diseases are of sucn a nature that when they were once shown to exist after the policy was issued they must, of necessity, have existed prior to that time. Nor was there an admission on the part of the plaintiff that he had received surgical or medical attention within the terms and meaning of the policy, which would authorize us to reverse the finding and judgment of the trial court upon the issue involved.

The second defense relied upon is that the insured failed to give written notice within ten days from the date of the beginning of disability from illness. Plaintiff contends this was waived. The disposition of the case on this point requires a short statement of the facts.

It seems that prior to the illness for which this suit is brought plaintiff was disabled from sickness; that plaintiff failed to give ten days written notice of the beginning of that sickness, but nevertheless the company waived notice and settled therefor paying plaintiff for two weeks and a half. The second sickness, within the terms of the policy began, as stated, on July 10. Plaintiff was confined to his bed and was taken to a hospital in St. Louis where an operation was performed on him for gall stones and bladder trouble, and he did not get up until September 25. On

July 29th, the company received written notice of this illness. This, of course, was more than ten days after the beginning of the illness. Upon receipt of the notice the company, through its adjuster, wrote the Bolton Jewelry Co. at Fulton, that if Mr. T. M. Bolton's second sickness originated previous to July 19th, there was no claim against the company since written notice was not filed in its office until July 29th. Bolton was at that time not in Fulton but in St. Louis. As soon as Bolton got out of the hospital and returned to Fulton, he wrote defendant, on September 20th, saying he had gotten up from a spell of eleven weeks serious illness including an operation, necessitating a stay of eight weeks in a St. Louis hospital, and asked for the necessary blanks to be filled out for a sick benefit claim. To this the defendant replied on September 30th saying: ''It is just as much of a consideration on your side of the contract to get written notice to the Company within ten days in case of sickness as it is that you pay the premiums due. *Should you ever be disabled in the future,* please remember it is your contract to get written notice to the Company promptly. We enclose herewith a preliminary, but please take notice that the Company is admitting no liability, is waiving no defense which it has to your claim, whether expressly stated or not, and is reserving its right to demand compliance with every condition of the policy.'' The ''preliminary'' mentioned in this letter was the blank forms of proof for which plaintiff had asked.

Upon receipt of these blanks plaintiff went to the trouble and expense of having them made out and sent to the company about the 14th of October. On the 20th of October, the company replied saying: ''After consulting with the claim department I find that on July 13, 1913, that you were paid a claim for $45 on account of a disability, part of which was due to some

trouble with the gall bladder. When this payment was made, the claim department required a waiver from you, a copy of which is hereto attached. Now, you come again with a claim, reported on the twenty-seventh day of September, 1913, for a disease of the gall bladder and an operation therefor. Is it possible that you have forgotten about this waiver? You evidently have, because you are not entitled to any claim under that waiver for this trouble. It appears, from all the testimony in this case, that your bladder has been a trouble to you for some time and you are not entitled to insurance, and your policy is hereby cancelled.''

Now, upon the question whether this court can say as a matter of law that no waiver of the notice has occurred, we must remember that if there is evidence from which waiver can be inferred, then we cannot interfere with the trial court's judgment on that question. In addition to this, in order for a forfeiture to be enforced it must not only clearly appear that the right to a forfeiture existed but also that such right was exercised or insisted upon. And since there is a difference between the status and situation of the parties to a contract of insurance, the contracts, acts, and declarations of the insurer are construed in favor of rather than against the insured when such construction is possible. With these preliminary observations in mind, let us see whether or not an inference can be drawn from the evidence that the failure to give the ten days written notice was waived. For if such inference can be found, then the trial court's finding must be respected.

In the first place, the plaintiff was dealing with a company that had theretofore waived the requirement of such notice and had paid him for a former sickness without that feature of the contract being complied with. This would not be of much importance by itself, but taken in connection with what the com-

pany afterwards did, we think it may be considered. Having waived notice as to a former sickness of plaintiff, the defendant writes its letter of September 30, in which it sends blanks for proof of sickness. Why send these blanks if the company was going to insist upon its freedom from liability on account of failure to give notice? And why use the language it did? We think it natural and reasonable that one receiving such a letter would understand it to mean that, while no notice was given, yet the company was not going to insist upon it this time but was sending a blank form of proof with an admonition not to let failure of notice to occur again, and to be more careful in the future; and that if proper proof was made and everything therein was all right, no trouble would be encountered on account of the failure to notify. Especially would plaintiff be led to think this because his other claim had been paid without the required notice. In this situation, plaintiff went to the trouble and expense of having the blank form filled out and sent to the company. And the company, upon the receipt of such proof, did not say anything about want of notice but, having ascertained from such proof, that the claim, as it thought, had been released, it refused payment on that ground alone. And thinking the proof also showed that there was a breach of plaintiff's warranties, the defendant cancelled the policy, As said in Unthank v. Travelers' Ins. Co., 28 Fed. Cases 824, l. c. 825, "if the defendant was disposed to resist the payment on the ground that the formal notice had not been given, why was not this objection noticed in the letter? And why did the company make the "decision" mentioned in the letter on other grounds than the want of notice, as it seems was done? And may we not here well apply the maxim that Expressio unius exclusio alterius?" Of course, this letter of October 20, could not be considered as causing plaintiff to change his position by going to the trouble of furnishing proof

since it was written after plaintiff had done that. But the letter could be considered by the court along with all the other acts of the defendant in determining whether or not the company did as a matter of fact rely upon a forfeiture for the want of notice or whether such was waived. The fact that the company, after having paid one claim in which notice was waived, sent blank proofs again where timely notice had not been given, and thereafter received and considered such proofs and refused to pay solely upon a ground discovered in such proofs, could be considered by the trial court in determining the proper construction to be placed upon the meaning of the letter of September 30th, and the intention on the part of the company. The subsequent action of the company in accepting and considering such proofs and finding against plaintiff solely on grounds ascertained therein, tends to show what construction the company itself gave to their letter of September 30, and that they did not intend to insist upon a forfeiture on account of a want of notice. And it tends to show too, what the company meant in the latter part of the letter of September 30th, wherein it said, it waived no defense. Such subsequent action tends to show that this clause may refer to any defense which the company has upon the merits which are to be disclosed by the proofs when the blanks are returned properly made out, and does not refer to the defense of want of notice.

In addition to this, there was evidence from defendant's side of the case that plaintiff had been a collector in his locality for the defendant and had been a "pusher" for the company, that is to say, a help and an aid to it in extending its business there, and that it did not want to lightly alienate his good will.

Taking all these things into consideration, we think there is enough in the evidence to justify a reasonable inference that the company did, as a fact, waive the want of notice. There being room for such infer-

ence, we cannot disturb the trial court's finding upon that issue.

The third defense pleaded is that plaintiff has released defendant, and to this plaintiff replied that such pretended release was without consideration. On this branch of the case, the facts are that, as hereinbefore stated, previous to the sickness on which this suit is based, plaintiff was disabled by sickness for two-and-one-half weeks and presented a claim for it and the same was paid. This sickness resulted from an attack of bladder trouble and gall stones as did the second sickness. The receipt which plaintiff was required to sign, and which he did sign, when this first claim was paid, read as follows: "For and in consideration of the sum of forty-five and thirty-three one-hundredths dollars, to me in hand paid by the Inter-Ocean Life and Casualty Company, the receipt whereof is hereby acknowledged, I agree that the above shall be in full discharge of all claims which I now have or may hereafter have, on account of any disability, resulting directly or indirectly, wholly or partially, from, or any infirmity due to diseases due to gall bladder or any of digestive organs. THOMAS M. BOLTON, Claimant."

After executing this receipt, plaintiff continued to pay, and the defendant to receive, the full premium of $1.50 per month as before and continued to do so up to the time defendant cancelled the policy in its letter of October 20th, which was after he had recovered from the second sickness. This receipt was signed before the second sickness began. Plaintiff got up from the first sickness and was able to go down to his store and attend to his various duties. The sickness required by the policy was such illness as would necessarily and continuously confine him in the house and for which he would be regularly visited by a legally qualified physician. Afterwards, plaintiff was again taken

187MoApp12

down with the same trouble and for this sickness the present suit is brought. Did the above receipt release defendant therefrom, or was there any consideration therefor?

It must be borne in mind that the feature of the policy now in question is *health* insurance, not accident insurance. The insurance provided for in this feature of the contract was disability from sickness, and the second disability from the second attack of sickness was a different disability from the first, and furnished grounds for another and different claim against the company. The disabilities were different although they were caused by the same disease. When plaintiff settled with defendant and signed the above receipt he had no means of knowing that he would again take down with another attack. Within the meaning of the policy the second attack was another sickness and another disability though the disease was the same. It is not like a case of *accident* insurance. for there the plaintiff seeks indemnity for results arising from a certain occurrence, namely, an accident. In such case, the results are all caused by an event that has transpired before he settles. Whatever loss flows therefrom must be claimed and recovered as one loss. Since the accident caused all the loss, it constitutes but one cause of action, and a cause of action cannot be split. Hence, if a plaintiff has met with an accident and settles for that accident, he cannot afterwards sue for subsequent indemnity of similar nature on account of that same accident. But in health insurance each disability furnishes a new ground for a claim, provided it is produced and arises after and not before a former claim for disability is made. When plaintiff settled for the first sickness that was a settlement of that cause of action, and when another attack seized and disabled him that was another and a different cause of action. It was not a result growing out of an event for which he had fully settled. The

case of Clanton v. Traveler's Protective Assn., 101 Mo. App. 312, cited by defendant was where plaintiff settled for an accident and then sought to recover additional indemnity for results growing out of the same accident. Consequently, it is not applicable. The case of Martin v. Manufacturers' Accident Indemnity Co., 151 N. Y. 94, is inapplicable for the same reason. The case of Conroy v. Equitable Accident Co., 63 Atl. 356, was on a policy of health insurance, but there the illness was one continuous illness. It began and lasted uninterruptedly for ten weeks. For some reason the plaintiff did not wait until after the termination of his disability but obtained the proper blanks, had them filled, and returned to defendant, and presented his claim for only sixteen days of that time. The company settled in full for that sickness and he brought suit to recover an additional amount for the same sickness. The court held that as he had settled in full for it he could not recover. But in the case at bar, the disability for which plaintiff was paid had ended, and the one for which he now sues was another disability, although it was caused by a recurrence of the same disease.

The premiums collected after the first disability remained the same as before. No change nor reduction was made therein because the policy no longer covered disability from that particular disease. Nor was plaintiff told that the policy was not to be carried covering all diseases as before. The defendant had not paid more than it owed. There was, therefore, no consideration for the release as to other disabilities arising from diseases to the gall bladder or digestive organs.

It is urged that the court erred in excluding the testimony of Dr. Crews, plaintiff's family physician, offered by defendant to show that *the first sickness of plaintiff was a disease of the gall bladder*. Inasmuch as plaintiff had sent defendant this doctor's report on

that sickness, we think plaintiff had waived the right to object to this witness testifying. But plaintiff had already admitted that the first sickness was from gall stones and a complication of the gall bladder and that it had been so reported to the company. So that the exclusion of the doctor's testimony as to the disease causing the first sickness, while erroneous, was harmless error, since plaintiff had already admitted the fact sought to be elicited from the doctor. The statute forbids the reversal of a judgment for an immaterial error. [Sec. 2082, R. S. 1909.]

It follows from the foregoing that the judgment should be affirmed, and it is so ordered. All concur.