## Sun Accident Association v. Mattie Olson.

1. INSURANCE—*Post Mortem Examinations—Notice.*—In the absence of any law or provision of the contract of insurance requiring that the company should be notified of the time and place when a post mortem examination would be held for the purpose of determining the cause of the death of a person insured against death by accidental means, want of such notice does not affect the competency of the evidence of facts developed at such examination. Its weight and influence with the jury might be affected by secrecy or a partisan character in the proceeding if such facts appeared, but its admissibility is not affected by a failure to give notice.

2. SAME—*Notice of Death.*—The notice, under a provision of an insurance policy requiring that immediate notice shall be given in case of the death of the insured, means a notice within a reasonable time in view of the circumstances surrounding the case.

3. SAME—*Sufficiency of Proofs.*—Where the policy was conditional that the loss was to be paid within ninety days after sufficient proof of the death and cause of the same, and the blank proofs furnished by the company contained a blank certificate to be filled out by the attending physician, which such physician refused to sign, *it was held,* that the contract did not require the beneficiaries under the policy to furnish the certificate of the attending physician, but referred to the kind of proof required.

Assumpsit, on a policy of accident insurance. Appeal from the Circuit Court of Rock Island County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

JOSEPH L. HAAS, attorney for appellant.

WILLIAM A. MEESE and ADAIR PLEASANTS, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

On April 24, 1893, appellant issued to Peter Olson, a lumber piler, of Moline, Illinois, a certificate of insurance, agreeing to pay appellee $1,000, or so much thereof as might be collected for that purpose under its charter and by-laws, in the event of the death of said Peter Olson from bodily injuries effected through external, accidental and violent means. He died November 13, 1893, and appellee, who was his widow, brought this suit to recover the amount of the certificate. A trial resulted in a verdict for $562.79, the amount that an assessment would have produced, and there was judgment for that amount.

The certificate provided that the insurance should not extend to any injury of which there should not be an external and visible sign; that immediate notice of death should be given to defendant and a failure to do so should invalidate all claims under the certificate, and that a surgeon selected and employed by defendant should be allowed to examine the person of the insured in respect to any alleged cause of death when and so often as might be reasonably required by defendant. The amount was payable within ninety days after sufficient proof of death from causes embraced in the certificate. But one objection is made to any proceeding or ruling on the trial, and that is the admission of evidence of a post mortem examination of the body of the deceased for the purpose of proving the cause of death. Under this objection it is said that the body was not proved to be that of Peter Olson, but this is a misapprehension of the evidence, as that fact was proved. The main contention, however, is that the evidence was not admissible because defendant was not notified that the autopsy would be held. It is contended that plaintiff had no right to proceed to take testimony and anticipate a defense without notifying defendant so that it could be represented. There was no suit pending, and the purpose of the examination was to obtain evidence of the cause of death. There was no provision of the law or the contract that defendant should be notified when such an

examination should be held, and the want of notice could not affect the competency of the evidence. Its weight and influence with the jury might be affected by secrecy or a partisan character in the proceeding if such facts appeared, but its admissibility was not affected by a failure to give notice.

It is insisted that the verdict was not justified because it was not proved that the death resulted from bodily injuries, or injuries of which there was any external or visible sign, and immediate notice of death was not given to defendant, and the proof of plaintiff's claim was not sufficient.

The evidence established the following facts:

On October 30, 1893, Peter Olson fell from a lumber pile about ten feet high. He was a large heavy man in perfect health. His fellow workmen got him up in a few minutes, and he remained at the yard for a time. His hands and wrists swelled badly, and he complained of them and of his bowels, holding his hand on the side of his abdomen and saying that he felt very sore inside. On the next day he called on his physician, A. H. Arp, who was also defendant's surgeon, at Moline, and exhibited his swollen hands and wrists for treatment. Dr. Arp treated them and he remained about home complaining mainly of them, and also of his back and side. He went back to the yard once and attempted to work, his hands being much better, but he could not work. On November 6th, he took to his bed and called Dr. Meyer, who found him suffering acute pain under the edge of the ribs on the right side and vomiting. The examination at that time was superficial, because he was in so much pain that he could not stand it. Dr. Meyer left medicine for him and did not call again. On November 8th, Dr. Arp was called again and pronounced the disease pneumonia, and treated him until he died. He complained of the pain in his bowels, and Dr. Arp attributed it to coughing. He vomited and the doctor thought that was caused by slime coming up in his throat when he coughed. The doctor recommended a bandage around his bowels for the pain, but the bandage made the pain so intense that it could not be endured. No

examination of the locality of the pain was made. The death was on November 13th, and when the family advanced the idea that it resulted from the fall, the doctor insisted on his opinion, and said that if they did not believe him he would hold an autopsy gratis, and both could call in doctors as witnesses. The family concluded to not have the examination and the funeral and interment took place November 15th. Three days afterward the body was exhumed and an autopsy was held by Chas. C. Carter, G. L. Eyster and S. W. Lincoln, three doctors who found the lungs, heart, liver, and stomach in healthy and normal condition, demonstrating that the death did not result from pneumonia or other disease of the lungs or any of those organs. There was a discoloration of the skin at the seat of the pain on the right side, the bowels were agglutinated into a solid mass, and there was between two and three pints of pus in the peritoneal cavity. It appeared that the death was caused by an acute purulent peritonitis of traumatic origin, and this fulfilled the conditions of the certificate. Dr. Meyer also testified that deceased did not have pneumonia on the 6th. At the trial Dr. Arp adhered to his opinion that the man had pneumonia and died of it. His theory formed when he treated the patient did not yield in any particular to the facts. The jury, however, were guided by demonstrated facts, and were fully justified in being so guided.

It is urged, however, that there was no external or visible sign of the bodily injury. The doctors who held the autopsy were of the opinion that the discoloration on the body was not due to any post mortem change, but that it existed in life, and there was testimony that it was yellow and blue at that place at the time of the death. The undertaker did not notice the discoloration until the following morning, when he said that it was of a rainbow color all around that side, but the jury had sufficient warrant for finding that there was an external and visible sign of the injury.

It is agreed that the immediate notice provided for in the certificate in case of death means a notice within a

reasonable time in view of all the circumstances, but it is claimed that the notice in this case was not given until December 1, 1893, and that there was unreasonable delay in giving it. The office of defendant was near by in Rock Island, and the son of deceased testified that he called there and told the secretary of his father's death on the day following that event; that he went there again November 20th, and gave the secretary a copy of the post mortem report, when the secretary gave him a blank to fill up with proofs, and that he served a written notice on December 1st. The circumstances were somewhat peculiar. The attending physician was also the surgeon for defendant, and insisted that no claim could be made against defendant. The family were put in some doubt as to what could be done. The surgeon knew the fact of death, and there was evidence that the secretary knew of the autopsy the day after it was held. The jury had authority for finding that the verbal notices were given and no right lost.

We think that the formal written notice was served in a reasonable time in view of all the conditions.

The last point made is that the proof of plaintiff's claim was not sufficient. The contract was that the money was to be paid within ninety days after sufficient proof of the death and cause. The blank handed to the son of deceased by the secretary contained a blank certificate to be filled out, and signed by the attending physician, and when the blank was returned there was written across it the following : " Dr. Arp, the attending physician, refuses to sign this." To supply the required proof there was a copy of the report of the autospy. It was not the contract that plaintiff must furnish the certificate of the attending physician, but that was the kind of proof insisted upon. The certificate could not be obtained because Dr. Arp honestly believed that the man died of pneumonia. Under those circumstances it was no objection to the proof that it was made in some other manner, sufficiently establishing the fact. The judgment will be affirmed.