# Ruby M. Rich, Appellee, v. Hartford Accident & Indemnity Company, Appellant.

## Gen. No. 6,440.

1. INSURANCE, § 601*—*what constitutes prima facie case as to accidental injury.* In an action to recover on an accident insurance policy, *held* that the presumption of law that all men are animated by the instincts of self-preservation, and the natural desire to avoid personal injury was sufficient to make out a prima facie case that a cut on the finger of decedent which became infected with streptococcus germs so as to result in his death was accidental, where there was no ground for suspicion that the wound was intentionally inflicted.

2. INSURANCE, § 686*—*when directed verdict for defendant in action on accident insurance policy is improper.* Evidence *held* sufficient to forbid a directed verdict for defendant, in an action to recover on an accident insurance policy, where instructions were given at the instance of both parties that defendant was only liable if the insured inoculated himself with streptococcus germs in a cut on his finger, resulting in his death, at the same time and as a part of the same cut, and that if the germs entered his system through the cut at a later time there was no liability.

3. INSURANCE, § 421*—*immateriality of when · streptococcus germs enter wound causing death.* As a matter of law it is immaterial when streptococcus germs entered a wound, whether at the time of the wound or later, resulting in blood poisoning which caused the person's death, in an action to recover on his accident insurance policy.

4. INSURANCE, § 693*—*when instruction on waiver of notices required by accident is erroneous.* An instruction, given at plaintiff's instance, that if, after the death of the insured under an accident insurance policy, the defendant insurer by its agent denied liability on the policy, then such denial was a waiver of all notices required by the policy, was erroneous, where the policy required that immediate notice of accidental death must be given.

5. INSURANCE, § 683*—*when question of giving notice of death within reasonable time should be submitted to jury.* Where an accident insurance policy required that in the event of accidental death immediate notice must be given to the insurer, and that failure to give such notice should not invalidate any claim if

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

notice was given as soon as was reasonably possible, the question of giving notice of death within a reasonable time should be submitted to the jury.

6. INSURANCE, § 666*—*when evidence is insufficient to show that notice of accidental death was not given as soon as reasonably possible.* Where plaintiff 2 days after the death of the insured under an accident insurance policy placed her claim as beneficiary in the hands of her attorney, who 5 days thereafter advised the insurer of the death and asked for blanks for proof of loss, *held* that a finding against the plaintiff on the question of notice, under a provision of the policy requiring that in the event of accidental death of the insured immediate notice must be given to the insurer and that failure to give such notice should not invalidate any claim if notice should be given as soon as was reasonably possible, would be so manifestly against the facts that it could not be permitted to stand.

7. INSURANCE, § 651*—*when whole of coroner's verdict as to cause of death is admissible in action on accident policy.* The whole verdict of a coroner's jury finding that streptococcus infection "received in a manner to this jury unknown" was the cause of death of the insured under an accident insurance policy, was competent evidence, including the part quoted, in an action to recover on the policy.

8. APPEAL AND ERROR, § 1505*—*when hypothetical questions are not reversibly erroneous.* It cannot be harmful error to recite in hypothetical questions uncontroverted facts.

9. EVIDENCE, § 399*—*what is not proper expert testimony.* In an action to recover on an accident policy for the death of insured, *held* that questions and answers as to how streptococcus germs, an infection of which produced blood poisoning which caused the person's death, were communicated to him, were violative of the rules of evidence governing expert testimony, if there was any reasonable doubt that death was caused by a disease germ entering the person's system through a certain cut on his finger to which the witnesses referred as the means of such communication.

10. EVIDENCE, § 454*—*when expert opinions are entitled to little weight as to existence of wound.* Evidence that there was a wound on the finger of decedent, from an infection of which it was claimed he died, *held* so conclusive that the expert opinions of witnesses who examined him at an inquest or autopsy are of little weight, in an action to recover on his accident insurance policy.

Appeal from the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 16, 1917. Rehearing denied October 22, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Page, Hunter & Page, for appellant.

Keithley & Keithley, for appellee.

Mr. Presiding Justice Carnes delivered the opinion of the court.

This is an appeal by the defendant company from a judgment on a verdict for $7,776 in favor of the appellee, Ruby M. Rich, the beneficiary named in an accident insurance policy issued to her husband, Charles A. Rich, indemnifying "against loss caused directly and exclusively by bodily injury sustained solely and independently of all other causes through accidental means"; and providing that "blood poisoning resulting directly and exclusively from such injury shall be deemed a bodily injury."

It appears from admittedly competent evidence that April 21, 1916, the insured was a man 35 years old in good health. His wife, the appellee, had then been sick 10 days with erysipelas of the head and face. He took care of her—washed her eyes and face. On that day there was a slight wound on the fore finger of his right hand, which bled freely. He treated it with home remedies and did not regard it of much importance. Four days later he was suffering with a temperature and pain and swelling of that arm, and was ordered to bed and properly treated by a physician from that time until his death from streptococcic toxemia, or blood poisoning, May 4, 1916, 13 days after the injury. The fatal germ entered his system through the cut on his finger either at the time of the scratch or afterwards. The evidence leaves the time of the infection uncertain, and from the nature of the case we presume no evidence could be obtained showing clearly whether the germ entered at the time of the cutting or some minutes, hours, or perhaps 2 or 3 days thereafter. Appellee testified on the trial that

her husband cut his finger opening a bottle of pop, but on her cross-examination it appeared that her eyes were swollen shut at that time, and we agree with appellant that her statement as to how the finger was injured should be disregarded. Appellant says that leaves no evidence of an accidental injury and therefore the case fails. The presumption of law that all men are animated by the instincts of self-preservation and the natural desire to avoid personal injury is sufficient to make a prima facie case that the cut was accidental. (*Fidelity & Casualty Co. of New York v. Weise,* 182 Ill. 496; *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205.) There is no ground for suspicion that the wound was intentionally inflicted. We have, therefore, a case on the merits of a slight accidental wound resulting in death from the introduction of a noxious germ at the time, or at some unknown and unascertainable time within 2 or 3 days thereafter. The court, at the instance of each party, instructed the jury that the defendant was only liable if the insured inoculated himself with the virus at the same time and as a part of the same cut; that if the germs entered his system through said cut at a later time there was no liability; therefore the verdict of the jury involves a finding that the germ entered at the time of the cutting. Appellant argues that there is no evidence that it entered at that time and for that reason the court erred in refusing its motion for a directed verdict. We think there was evidence from which the jury might fairly infer that the germ was introduced by the instrument which made the wound, perhaps from the presence of the germ on the finger or on the instrument, sufficient to forbid a directed verdict; but if, as matter of law, appellee's right of recovery rests on the finding of that fact, the question is so doubtful that errors in ruling on evidence and instructions might be held

ground for reversal which should not be so considered if it is immaterial when the germ entered.

Appellant relies on *Central Accident Ins. Co. v. Rembe*, 220 Ill. 151, and particularly on the quotation on page 159 from Niblack: "If the inoculation occurred at the time the wound was made and was a part of the accident, the accident was the sole and proximate cause of the death, though blood poisoning ensued," to sustain its contention that there was no liability if the inoculation did not then occur. The *Rembe* case when it reached the Supreme Court was not treated as presenting that question. It is said on page 159 of the opinion that there was no evidence that the inoculation was caused after the infliction of the wound; and on page 160, in substance, that the affirmance of the judgment by the Appellate Court had disposed of that contention. But in the Appellate Court it was presented and discussed in the ·opinion by Mr. Justice Puterbaugh (122 Ill. App. 507). It is there said the evidence tended to prove that the infection entered some time after the wound was made, and "be that as it may, if the prime cause of the death can be said to have been septicemia, and not the wound itself, there would be some force in appellant's contention that there can be no recovery under the first count of the declaration. It is manifest, however, that the insured would not have contracted septicemia had he not received the wound. Otherwise the poisonous germs with which he came in contact would have been harmless," citing *Martin v. Manufacturers' Accident Indemnity Co.*, 151 N. Y. 94, 45 N. E. 379; *Western Commercial Travelers' Ass'n v. Smith*, 40 L. R. A. 653, 85 Fed. 401; *Omberg v. United States Mut. Acc. Ass'n*, 101 Ky. 303, 40 S. W. 909; *Freeman v. Mercantile Mut. Acc. Ass'n*, 156 Mass. 351, 17 L. R. A. 753; and *Delaney v. Modern Accident Club*, 121 Iowa 528, 63 L. R. A. 605. The Supreme Court in its opinion also cites and quotes with approval from

*Delaney v. Modern Accident Club.* In that case counsel, as in the present case, conceded that if the bacilli were introduced by the instrument at the time the cut was received the defendant would be liable, but contended that "the bacilli causing the diseased condition of the hand, and the subsequent death, may have been and probably were introduced into the blood of the hand through the cut, but after it was received," and pointed out testimony sustaining that conclusion. The court said: "It seems to us, however, that it is wholly immaterial when or how the specific bacilli which caused the disease known as 'blood poisoning,' which resulted in the death of Delaney, were introduced into the wound, whether at the time it was inflicted or subsequently. Blood poisoning is a disease, just as many other pathological conditions of the human system, resulting from the introduction therein of other specific bacilli, are diseases. It occurs to us that it is, indeed, wholly immaterial whether the pathological condition which results in death is due to bacilli or not. The simple question is whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous." In *Ballagh v. Interstate Business Men's Acc. Ass'n,* 176 Iowa 110, L. R. A. 1917A 1050, the court was asked to overrule its decision in the *Delaney* case that it was immaterial when or how the specific bacilli which caused the disease were introduced into the wound, whether at the time it was inflicted or subsequently, which it refused to do after reviewing the cases cited in the *Delaney*

512    APPELLATE COURTS OF ILLINOIS.

Rich v. Hartford Accident & Indemnity Co., 208 Ill. App. 506.

opinion and subsequent cases, and said there is nothing intrinsically unjust in the doctrine and that it has the support of the weight of authority, and to hold otherwise would deny liability except where the death is the instant result of the accident, for if the injured party survives any substantial length of time, there are numerous diseases of traumatic origin, some one of which is practically certain to make its appearance, lay its hand upon the injured body and thus become the method or instrument through which the injury effects its fatal results. The court cites many authorities in support of its position, among them *Cary v. Preferred Acc. Ins. Co. of New York,* 127 Wis. 67, 5 L. R. A. (N. S.) 926. In that case there was a slight abrasion and blood poisoning followed, probably from the introduction of the fatal germ some time after the accident. Counsel there urged that a distinction must be recognized between an introduction or injection of poison or bacteria coincident with the injury and an invasion of bacteria after an injury. The court refused to so hold, and said: "The evidence also shows that the abrasion of the skin furnished the portal of entrance through which bacterial infection entered Mr. Cary's system and caused the septicemia which was the immediate cause of his death. It is urged that unless the evidence establishes the fact that the bacterial infection occurred at the time of the bodily injury by the fall, it cannot be found that his death was proximately and solely caused by the accident. As above stated, responsible causation, as applied in the law, is not dependent on time, distance or a mere succession of events. If an injury is inflicted by an event, and it is found that it has set in motion all the succeeding agencies sharing in the result, then such event, as the efficient producing cause of the injury, is held to be the proximate cause of the injury. * * * No such bacterial infection would in all probability have occurred had there been no abrasion of the skin. * * *

The bacterial infection and the resultant septicemia were in the natural course of events dependent upon and set in motion by the abrasion of the skin caused by the fall. The entry of bacteria into the system cannot be considered as an independent cause and as having intervened between the accidental fall and the death, because of the fact that it was conditioned on the existence of the abrasion of the skin and was wholly in-cidental to and set in motion by it, thus making it one of the events in the chain of causation.'' The court in *French v. Fidelity & Casualty Co. of New York,* 135 Wis. 259, 17 L. R. A. (N. S.) 1011, discusses the question of liability where the poison germ enters the wound after the time of the accident, and says: ''It must be apparent, however, that but for the accidental injury there would have been no cause for infection; that but for the abrasion the disease germs could not have entered and produced the fatal result. The wound produced by the accident was therefore the proximate and sole cause of death,'' citing the *Cary* case, *supra,* and other Wisconsin cases; also the *Delaney* case, *supra,* and other authorities. In *Western Commercial Travelers' Ass'n v. Smith, supra,* there was an accidental injury to the toe of the insured. Blood poisoning followed, causing death. The court held that the blood poisoning was not an intervening and independent cause that would prevent liability, and said: ''If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent and accidental means which produced the bodily injury, the association was equally liable to pay the indem-nity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attrib-

514       APPELLATE COURTS OF ILLINOIS.

Rich v. Hartford Accident & Indemnity Co., 208 Ill. App. 506.

utable, not to the disease, but to the *causa causans*, to the accident alone." Authorities are there cited and discussed, and the reasoning is in line with the *Delaney* case. Some cases discuss the accident as causing the death if blood poisoning followed without noticing the question whether the germ entered at the time or after. In some cases as in *Central Acc. Ins. Co. v. Rembe, supra*, the evidence made it highly probable that the fatal germ was introduced with the instrument causing the wound. In others, as in the present case, it was incapable of proof when it entered. We do not know that our Supreme Court has discussed the law applicable to a case where the germ might be presumed or found to have entered some appreciable time after the accident occurred. There was at one time considerable question whether there was liability if the germ entered at the same time because both accident and disease contributed to the death, and it was argued that death did not result from the accident alone. The law on that subject we think is as announced in *Western Commercial Travelers' Ass'n v. Smith, supra*, and by this court in *Crandall v. Continental Casualty Co.*, 179 Ill. App. 330, that when an accident causes a diseased condition, which, together with the accident, results in the injury or death complained of, the accident alone is to be considered the cause of the injury or death. Some cases cited in this connection are discussing the principles underlying that proposition of law; and where the germ entered the system concurrent with the accident that fact is emphasized in the opinion without undertaking to say what the rule would be if the germ entered afterwards.

In the present case it is not denied that if the accident caused the diseased condition it is to be considered the cause of the death. The question is whether it did cause the diseased condition, and that is the question discussed and decided in *Delaney v.*

*Modern Accident Club, supra,* and other cases above referred to holding the same rule, many of which cite and follow the *Delaney* case. An extended note and discussion of authorities is found in L. R. A. 1917A 1056, following the report of *Ballagh v. Interstate Business Men's Acc. Ass'n, supra.* There is much in the cases there noted, most of them citing the *Delaney* case, supporting the conclusion in that case that it matters not when the germs got into the wound, nor where they came from, if it be a fact that they did actually enter through the wound as a portal, then the wound is the proximate cause and blood poisoning an intervening cause.

The only cases cited by appellant on this point are *Martin v. Equitable Acc. Ass'n,* 61 Hun 467, 16 N. Y. Supp. 279, and *Martin v. Manufacturers' Accident Indemnity Co.,* 151 N. Y. 94, 45 N. E. 377. Both cases arise from the same accident, the insured carrying policies in different companies. The facts as stated by the Court of Appeals were that the insured' accidentally punched out a piece of the skin and flesh from the inside of his finger. Ten or twelve hours afterwards the finger was swollen and inflamed. Other symptoms followed, proving it to be a violent and unusual case of blood poisoning, of which he died 13 days after the injury. He had at the time of the accident a wound on the thumb which had not healed, and one theory of the defense was that the fatal germ had entered the wound on the finger from that source some time after the accidental injury, and therefore the death was not the result alone of the injury to the finger. The question whether the poisoning was coincident with the wound was litigated on the trial, and the court instructed the jury if it was, the defendant was liable. The verdict and judgment were for the plaintiff, and the reviewing court held not that the instruction was correct, but that it did not prejudice the defendant, and that the jury, having found the

fact in favor of the plaintiff, the finding could not be disturbed.

In the other *Martin* case, *supra,* the Supreme Court said if the inoculation occurred at the time the wound was made, the death might be attributed to the accident as the sole and proximate cause, although blood poisoning ensued. In each of these cases the court is discussing the law applicable when the injury and poisoning occurred at the same time. It may be inferred that the court considered it material and necessary to plaintiff's case that the poisoning should be coincident with the wound; but in neither case was that question clearly before the court and considered, discussed and decided as it was in the *Delaney* case and other cases hereinbefore mentioned in which a contrary conclusion was reached.

To analyze and discuss all of the numerous cases above cited and referred to in those cited cases would unduly extend this opinion. We have found no case in which a reviewing court held that a jury should be instructed, as matter of law, that the infection must be coincident with the wound to warrant recovery. There are cases where the jury have been so instructed and have found for the plaintiff and the reviewing court has refused to disturb their verdict where the evidence, as in the present case, made it clear that it was a mere matter of conjecture whether the germ entered the wound at the time of its infliction or soon afterwards, and some expressions indicating that even if the germ entered afterwards it was still a question of fact for the jury whether the accidental wound in permitting the introduction of the germ into the blood was the sole cause of death. If the question in the present case should be treated as one of fact and submitted to a jury, the issue would be presented under instructions much less favorable to the defendant than in this record. Their verdict here that the germ entered coincident with the accident affirmatively

answers such issue; and while it is very doubtful whether the germ did enter at the time of the accident, and may reasonably be presumed that another jury might not so find, we see no ground for a presumption that a jury should or would find that the wound was not the portal through which the fatal germ entered either at or after the time of the accident. If it is to be treated as a question of law, we think the decided weight of authority is with the *Delaney* case that it is immaterial when the germ entered the wound. In either view, whether a question of law or fact, we regard the verdict abundantly justified by uncontradicted and competent evidence. Cases have arisen where it is 'extremely doubtful whether the accident caused the disease; as for instance, typhoid fever, which was claimed to have been fatal because the accident had resulted in reducing the vitality of the patient, but it might have been contracted had the patient been in perfect health. In cases of this class there is much room for controversy both on the law and the fact, but in the present case the poisonous germ could only enter through an abrasion of the skin. There is, therefore, no room for suggestion that the germ might have entered the blood had the accident not occurred.

The policy provided that "in event of accidental death immediate notice thereof must be given to the company," and that it might be given by the beneficiary to the company at Hartford, Connecticut, or to any authorized agent, and that failure to give such notice should not invalidate any claim if notice was given as soon as was reasonably possible. Two days after Mr. Rich's death, appellee placed her claim in the hands of her attorney, and 5 days thereafter the attorney wrote a letter to appellant advising it of the death and asking for blanks to make proof of loss. One of appellant's representatives came to Peoria 9 days after the death, and asked for an autopsy on the

body of the deceased, which was granted. After-wards, 16 days after the death, appellant's representative advised appellee's attorney that he considered there was no liability on the policy. The court, at the instance of the plaintiff, instructed the jury if after the death of said Rich the defendant, by its agent, denied liability on the policy, then such denial was a waiver of the provision of the policy requiring proofs of death, and also waived all other notices required by said policy. Appellant claims that while the provision for notice only required notice within a reasonable time after the loss, yet it was a question for the jury whether, under the above facts, notice was given in a reasonable time, and that the court by that instruction withdrew that question from the jury and that the denial of liability, as above recited, was not a waiver of notice or of proof of loss if the requirement of notice within a reasonable time had not been complied with. Assuming that to be the law, can it be fairly presumed that the jury would or should have defeated the plaintiff on the ground of unreasonable delay in giving notice of death? This court in *Sun Accident Ass'n v. Olson,* 59 Ill. App. 217, in an opinion by Mr. Justice Cartwright, had under consideration a case where death occurred November 13th, and it was claimed notice was not given until December 1st (18 days). The contract of insurance there provided for immediate notice, and the court held the notice sufficient under the circumstances of that case. We are inclined to the opinion that the court should have submitted that question to the jury, but we also assume that the jury, or any other jury, impaneled to try that issue, would find it for the plaintiff, and that a contrary finding would be so manifestly against the facts that it could not be permitted to stand.

There was a coroner's inquest and the jury returned a verdict finding streptococcus infection "received in a manner to this jury unknown" the cause

of death.    The defendant offered the verdict in evidence, and the court refused to admit that part of it above inclosed in quotation marks.    This is argued as error.    We do not see why the whole verdict was not competent evidence, but we cannot see that it would have been of any material benefit to appellant to have the jury informed that the coroner's jury did not know in what manner the injury was inflicted.

Appellant urges that the court erred in permitting hypothetical questions that stated facts and called for opinions of the witnesses as to what did cause instead of what might have caused death.    The questions were incorrect in form and all, or some of them, recited as facts that a woman was afflicted with erysipelas and was waited upon by a man, and that during the care and attention given the woman the man suffered a cut upon his right index finger; that 5 days after that he suffered a chill and prostration, and was confined to his bed with a swelling in the arm and variable temperature, and died 13 days after the wound of streptococcic toxemia.    It cannot be harmful error to recite uncontroverted facts.    Appellant says it was harmful to assume that the man sustained a cut on his finger during the time he was treating his wife, the erysipelas patient.    That, and the other recited facts we regard established beyond dispute.    We do not see how the error could have harmed appellant. Appellee's expert witnesses were also asked how, in their judgment, those germs were communicated to Mr. Rich, through what medium, and the witnesses answered through an abrasion of the skin.    Witnesses were asked how the poison of which Mr. Rich died was communicated to him, and answered that having waited upon his wife, who was suffering from an infectious disease, the man, having suffered from an injury to the skin whereby it was possible for a germ to obtain access to his general circulation, that is the most plausible theory.    Other witnesses answered

that they thought the germs entered the wound through the index finger; that the most probable source of infection was the injury received to the finger, and that they considered the erysipelas from the patient the cause of death, and that the finger was the source of infection. These questions and answers violated the rules of evidence governing expert testimony. If there was any reasonable doubt that the insured's death was caused by a disease germ entering his system through the cut on his finger the contention that the judgment should be reversed because of that error would deserve careful consideration, but the facts are free from doubt. All a layman needed to learn from experts was that a germ from the head of an erysipelas patient entering a wound on the finger of the attendant might cause blood poisoning and death. The rest of the problem was easily solved without expert testimony.

Appellant complains of remarks of appellee's counsel in his address to the jury. The matter is not shown in the bill of exceptions but in the record proper. We do not understand counsel to seriously contend that we can consider the question so presented.

We conclude that the record does not disclose any reversible error, therefore the judgment is affirmed.

*Affirmed.*

Per Curiam on rehearing:

It is urged there was a sharp conflict of evidence on the question whether the infection entered through the wound at any time. This claim is mainly based on the testimony of experts that examined the deceased at the inquest or autopsy and testified on the assumption that there was no wound on the finger, admitting if there was one it was the probable port of entry or at least might have been. The evidence that there was a wound is so conclusive that those expert opinions are of little weight.