Minnie Olga Johnson Schachner, Executrix of the Estate of Maximilian H. Schachner, Deceased, Appellee, v. The Employers' Liability Assurance Corporation, Ltd., Appellant.

Gen. No. 36,253.

504

Heard in the first division of this court for the first district at the October term, 1932. Opinion filed December 29, 1932.

CHURCH, HAFT, ROBERTSON, CROWE & SPENCE, for appellant; BURT A. CROWE, of counsel.

TENNEY, HARDING, SHERMAN & ROGERS, for appellee; S. ASHLEY GUTHRIE and GEORGE E. HOWELL, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, as executrix of her husband's estate, bringing suit on an accident insurance policy issued to him, had a verdict and judgment for $8,231.50. Defendant seeks a reversal.

The assured died January 3, 1930. The policy provided that death must be "solely and independently of all other causes through accidental means." Defendant says that plaintiff did not prove that the assured's death was through accident.

The assured was 58 years of age, living at 4464 Berkeley avenue, Chicago; he was an interior decorator, antique collector and dealer and expert and lecturer upon objects of art; he was of a sociable disposition and had many friends. On the day he came to his death, he was preparing a lecture to be subsequently given. He had been in the habit for 18 years past of dining at a downtown club this evening of the week. He had suffered no particular financial reverses. When his wife left him at 10:30 o'clock in the morning of this day he was apparently in good health and spirits. She returned to the house at five o'clock in the evening to drive him downtown for his evening engagement; even before she entered the house she detected the odor of gas and on opening the door found the house permeated with it. Gas had been left burning in the kitchen oven and she went first to the kitchen and turned it off; she did not stop to notice whether the gas in the oven was still lighted or not; apparently it was burning as a parrot and dog nearby were unharmed. The bathroom, on the second floor, was heated by means of a portable gas heater which stood on the floor at the side of the tub, the gas coming through a hose fitted over a gas fixture in the wall and running around the tub and to the heater; it had been thus fastened for several years. When plaintiff entered the bathroom through the unlocked door she found the room filled with gas and she immediately turned it off at the heater; she did not stop to see whether it was burning or not. She found her husband sitting unconscious in the bathtub, the water nearly up to his chest; he held a cake of soap in his hand; his expression was peaceful and smiling. The

clothes in which he expected to dress for the evening were laid out on the bed in the adjoining room and his razor and shaving apparatus were also laid out ready for use. She immediately called a doctor and the police. The physician, Dr. Bamberger, arrived shortly and at the same time the police officers arrived with a pulmotor squad from the fire department. The doctor found a faint heartbeat but this disappeared while he was giving a hypodermic injection. The firemen worked on him with a pulmotor but were unable to revive him. The coroner's physician, Dr. Eggert, arrived some three hours later and examined the body; he did not perform an autopsy. Both doctors and the plaintiff testified that the face and body were of a "rosy hue," the dependent parts a particularly bright pink.

Dr. Eggert testified on the trial as to his wide experience with cases of carbon monoxide poisoning, and gave it as his opinion that the deceased might have come to his death by "carbon monoxide poisoning acute." He also said that the pink coloration of the body was characteristic of carbon monoxide poisoning.

Dr. McNally testified that he had been the chief chemist of the Chicago Health Department, had been teaching toxicology at Rush Medical College for many years and had written a number of articles on poisons and their detection. He testified in detail as to the characteristics and symptoms of carbon monoxide poisoning; that this poisoning was the only cause of death which would leave a distinct pinkish color to the body; he gave this opinion, based upon thousands of cases he had seen; also, that a man who had died from heart lesion, food poisoning or stroke of apoplexy would not show the symptoms which were exhibited in this case. Carbon monoxide is an ingredient of illuminating gas used in Chicago at this date.

We do not think it necessary to pass upon the point made by plaintiff, that defendant's affidavit did not

raise any question as to the cause of death, for the evidence amply shows that the assured died by poisoning from carbon monoxide from the accidental escape of gas from the heater.

Criticism is made of the hypothetical questions put to the doctors. While there may have been some technical errors, yet in face of undisputed testimony as to the cause of death, such errors, if any, are harmless. The same thing is also true of the answers of the medical witnesses. Dr. McNally during his testimony stated positively that the assured had died from carbon monoxide contained in the illuminating gas. This might not have conformed to the rule laid down in *Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 71, but under the circumstances it was immaterial whether he testified that the gas did cause the death or might have caused it. *City of Chicago v. Didier,* 227 Ill. 571; *Chicago Union Traction Co. v. Roberts,* 229 Ill. 481; *Heineke v. Chicago Rys. Co.,* 279 Ill. 210. We do not agree with defendant's contention that the testimony of the medical witnesses was based upon conjectural grounds. Both of the doctors were men of wide experience in this class of cases and their opinion was based upon observation and experience.

The policy provides that "in the event of accidental death immediate notice thereof must be given to the corporation," and that "failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." Plaintiff did not know of the existence of the policy until after her husband's funeral, which was on January 6. On about the 8th she examined the papers in his safety deposit box and found the policy there. January 13, formal written notice of the death and claim on the policy was sent to defendant. The general rule is that where the existence of a policy is unknown to the bene-

ficiary and notice is forwarded by him as soon as he discovers it, this is a sufficient compliance with the provision requiring immediate notice of the injury or death. 1 Corpus Juris, 476; *Employers' Liability Assur. Corp. v. Dean*, 44 F. (2d) 524. The word "immediate" in such a provision should not be construed in a literal sense; it means notice within a reasonable time under the circumstances. *Cantrall v. Great American Casualty Co.*, 256 Ill. App. 47; *Niagara Fire Ins. Co. v. Scammon*, 100 Ill. 644; *Rich v. Hartford Accident & Indemnity Co.*, 208 Ill. App. 506; *Sun Accident Ass'n v. Olson*, 59 Ill. App. 217.

Furthermore, defendant's insurance adjuster, Mr. Figel, testified that he was notified on January 6, the day of the funeral, that the assured had died January 3 in a bathtub.

The policy provides that the company shall have "the right and opportunity to make an autopsy in case of death where it is not forbidden by law." The funeral was January 6, three days after the assured's death; in accordance with his oral request and also as requested in his will, his body was cremated either on the day of the funeral or the day following. The provision in the policy gives the defendant the right to make an autopsy; plaintiff was under no obligation to initiate it. *Employers' Liability Assur. Corp. v. Dean*, 44 F. (2d) 524. She was required only to consent to an autopsy provided a request for it was seasonably made and it is within her power to grant the request.

A similar question was involved in *Cantrall v. Great American Casualty Co.*, 256 Ill. App. 47, where the insurance company had a telephone notice of the death on the day of the funeral but received no written notice until sometime thereafter, and made no demand for an autopsy until two weeks after the burial. The court held that such provisions are recognized by the courts with certain limitations; that a demand must

be made within a reasonable time and that this demand must be made and the autopsy performed prior to interment. See also *United States Fidelity & Guaranty Co. v. Hood,* 124 Miss. 548; *Aetna Life Ins. Co. v. Robinson* (Tex. Civ. App.), 262 S. W. 118; *Gath v. Travelers' Ins. Co. of Hartford, Conn.,* 113 Ohio St. 369. In *Clay v. Aetna Life Ins. Co.,* 53 F. (2d) 689, cited by defendant, the beneficiary refused to permit an autopsy although the request was made in ample time.

Figel, defendant's agent, was notified of the assured's death by accident on the day of the funeral and that the body was to be cremated after the funeral; after receiving this message he looked up the policy files and found that defendant carried insurance on the deceased; he made no investigation on the day of the funeral and did not communicate with plaintiff; he had a representative present at the coroner's inquest, which was held January 8. The jury could properly conclude that if there was any fault in failing to exercise its right to perform an autopsy, the fault was defendant's and not plaintiff's. *American Employers' Liability Ins. Co. v. Barr,* 68 Fed. 873.

Criticism is made of certain language of plaintiff's counsel in argument to the jury, but there was no serious error in this respect.

The court properly refused defendant's offered instruction No. 11. This was amply covered by given instruction No. 5. Furthermore, the refused instruction told the jury ''that the plaintiff is in law presumed to have known, understood, and to have had full notice of each and all of the terms and conditions expressed in the policy,'' and was therefore legally bound by them. Plaintiff did not know of the existence of the policy until January 8. She could not be presumed to know the terms and conditions of an instrument of whose very existence she was ignorant.

Defendant's proffered instruction No. 12 was properly refused. It in effect directed a verdict for the defendant provided the body of the assured was cremated before a claim was made upon the defendant for payment of the policy. This is clearly not the law.

As the jury was amply justified in finding that the assured came to his death through accidental carbon monoxide gas poisoning, and as there were no substantial errors upon the trial, the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.