**OCEAN ACCIDENT & GUARANTEE COR-
PORATION, LIMITED, v.
SCHACHNER.**

No. 5063.

Circuit Court of Appeals, Seventh Circuit.

March 30, 1934.

Ralph F. Potter, Leslie H. Vogel, E.
Douglas Schwantes, all of Chicago, Ill., for
appellant.

Roger Sherman, S. Ashley Guthrie, and George E. Howell, all of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The judgment under consideration was predicated on an Illinois policy of insurance indemnifying against accidental death or injury, issued by appellant to appellee's husband, whose death occurred January 3, 1930, from the alleged sole cause of asphyxiation occasioned by accidentally breathing atmosphere containing poisonous illuminating gas.

The suit was in assumpsit, the declaration being upon the policy and demanding judgment for its face of $15,000 plus accumulations thereon of $1,500, together with interest at 5 per cent. per annum from date on which proofs of the alleged accidental death were received by appellant.

Appellant pleaded the general issue, and interposed one special plea setting forth that the policy contained a provision that appellant "shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law"; and that before appellant knew of the death of the insured his body had been cremated, and thus appellant did not have opportunity to make an autopsy, all to the prejudice of appellant and in breach by appellee of the terms of the policy.

Appellee's replication sets up, as stated in the declaration, that it was not until January 8, 1930, after the cremation, that appellee first learned of the existence of the policy, and that within reasonable time thereafter, to wit, January 11, 1930, she gave notice to appellant of the death of deceased, and denied any breach of the policy on her part.

The court charged the jury that if it found for plaintiff, it should assess her damages at $16,500, and should add interest at 5 per cent. per annum from the time the evidence shows proof of the loss was received by defendant. The jury returned a verdict for $16,500. The court rendered judgment for this amount plus $2,465.95, which is the interest thereon at 5 per cent. per annum from the time suit was commenced to date of verdict.

Numerous errors are assigned and urged, the one we regard the most substantial being predicated on appellant's special plea.

While the evidence tends fairly to show that the death was solely the result of accident as charged, appellant doubtless had the right under the policy to demand an autopsy; and it may be assumed that in case of appellee's refusal to consent to appellant's request therefor, appellant would have been absolved from liability under the policy. Ætna Life Ins. Co. v. Lindsay (C. C. A.) 69 F.(2d) 627.

It appears that on the third day after the death, and after the funeral service, the body was cremated. Up to the time of cremation no notice of the death had been given appellant, and it had no knowledge thereof. But it further appears that appellee had no knowledge of the existence of the policy until, on January 8, the safe deposit box of deceased was opened in the presence of witnesses, and that then only did she first learn that the policy existed. There is no evidence tending even remotely to indicate that the cremation was procured by appellee for some sinister reason, or out of any purpose or plan to conceal from appellant the cause of her husband's death. Indeed, the cremation was brought about by a provision in the will of deceased, executed about eight months prior to his death, directing that his body be cremated.

While the policy specifies that immediate notice be given to the insurer in case of insured's accidental death, it also specifies that failure to give the notice shall not invalidate any claim if it be shown that it was not reasonably possible to give the notice as prescribed; and that notice was in fact given as soon as was reasonably possible. Here the notice was given promptly after appellee learned of the existence of the policy, albeit this was after the cremation.

There was surely no undue haste in disposing of this body, and there was certainly no obligation on the part of appellee to keep the body indefinitely as against the possibility that at some time in the future there might come to light a policy of insurance wherein the insurer's right to make autopsy is specified.

It has been held that there is no duty on the part of the beneficiary under such a policy to tender the body for autopsy. Employers' Liability Assur. Corp. v. Dean, 44 F.(2d) 524 (C. C. A. 5); Schachner v. Employers' Liability Assur. Corp., 268 Ill. App. 503. This may be required only upon de-

mand of the insurer seasonably made. Same cases; and Cantrall v. Great American Casualty Co., 256 Ill. App. 47, 60. If, after the death and before request for autopsy has been made, the circumstances have in good faith become such that the request would be unavailing, this of itself should not bar recovery upon the policy. American Employers' Liability Ins. Co. v. Barr, 68 F. 873, 877 (C. C. A. 8); Schachner v. Employers' Liability Assur. Corp., supra.

■ That there might be circumstances wherein, under such a policy, the insurer would not have the right and opportunity to make an autopsy is apparent from the very clause of the policy which permits it, in that the right to autopsy is given only "where it is not forbidden by law." Where it is so forbidden, then, of course, the claim must be disposed of as though the right to autopsy had not been given. Surely it must have been contemplated that if, without fault of the beneficiary, it is impossible to produce the body for autopsy, this of itself should not defeat recovery. If it were otherwise, the right of recovery under such a policy would be defeated if before it was possible to make an autopsy the body were irretrievably lost at sea, or destroyed in a hotel fire, or blown to bits by an explosion, or rendered unavailable through any other of the many possible happenings.

We are satisfied that under the peculiar circumstances of this case cremation of the body before opportunity to appellant to request an autopsy did not of itself bar recovery on the policy.

■ Appellant assails the court's inclusion of interest in the judgment in addition to the amount of the jury's verdict (Smith-Hurd Rev. St. Ill. 1933, c. 74, § 2). Par. 2, c. 74, Cahill's Ill. Rev. St. 1933 provides that creditors shall be allowed to receive interest at the rate of 5 per cent. per annum after moneys become due on any bond, bill, promissory note, or other instrument in writing. Insurance policies have been held under this statute to be instruments in writing whereon interest at the statutory rate accrues from the time they are payable. Mass. Mutual Life Ins. Co. v. Robinson, 98 Ill. 324; Grand Lodge v. Orrell, 206 Ill. 208, 69 N. E. 68; Little v. Illinois Bankers Life Ass'n, 247 Ill. App. 547, and cases there cited.

It is thus plain that if appellee was entitled to recover under the policy, she was entitled to recover $16,500 with interest thereon at lawful rate from the time she put herself in position to demand payment of the policy, and the court charged accordingly.

■ It would be too heavy a draft upon the imagination to conclude, as appellant contends, that the verdict for the face of the policy was a compromise, and thus disposed of any claim for interest. We cannot conceive that the verdict on this policy was given upon any account or theory other than for the face of the policy itself. Why interest was not included does not and cannot well appear.

Upon reason we are satisfied that, where there has been a verdict given for the face only of an insurance policy, the court is abundantly warranted in augmenting the verdict by the inclusion of accrued interest and entering judgment for the sum of the verdict and interest. This is fairly supported by adjudicated cases. Engelberg v. Sebastiani, 207 Cal. 727, 279 P. 795, 796; McAfee v. Dix, 101 App. Div. 69, 91 N. Y. S. 464; Calnon v. Fidelity-Phenix Ins. Co., 114 Neb. 194, 206 N. W. 765; United States v. Stephanidis, 41 F.(2d) 960 (D. C. N. Y.); Dean & Son v. W. B. Conkey Co., 180 Ill. App. 162, 182. See, also, Little v. Illinois Bankers Life Ass'n, supra, wherein this practice was followed; but the verdict there included the words "with interest" following the stated amount of the face of the policy. We find no case to the contrary where the circumstances were as here—a verdict for the exact amount of the face of the policy without the inclusion of accrued interest. We agree with the statement of the California Supreme Court in the Sebastiani Case, supra, wherein it was said: "In adopting the * * * procedure, the court is usurping no function of the jury, for there is no issue of fact involved as to said interest." We are satisfied there was here no error in the inclusion of the interest.

■ Appellant takes exception to that part of the charge which states:

"Where a man suffers injuries resulting in his death, which injuries might have been caused by accident or might have been intentionally inflicted upon himself and there is no preponderance of evidence as to the cause of such injury, then the presumption is that death was caused by accidental means and not intentionally self-inflicted or suicidal."

While the paragraph is not as clear as might be desired, we think it fairly appears that it purports to deal exclusively with the two alternatives of accident and suicide, and

to tell the jury that if they find from the evidence that the death must have been caused by one or the other, and does not preponderate to show suicide, the presumption which is indulged against suicide will raise a presumption that the death occurred from the only other alternative with which the paragraph purports to deal, viz., accident. Upon the premises assumed in the paragraph this seems to be an axiomatic statement. Assuming that under the paragraph the death must have been occasioned by one of the two enumerated causes, and that under the stated circumstances the law presumes one of these was not the cause, it follows that the death must be attributed to the other.

That there is an initial presumption against death by suicide has been too often determined by the courts to require elucidation here. Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 667, 8 S. Ct. 1360, 32 L. Ed. 308; Conn. Mut. Life Ins. Co. v. Akens, 150 U. S. 468, 475, 14 S. Ct. 155, 37 L. Ed. 1148; Metropolitan Life Ins. Co. v. Hogan, 62 F. (2d) 135 (C. C. A. 7). Where death is caused wholly by an outside violent cause, it has been adjudicated that, as between the theories of accident and suicide as the cause, the former will be presumed if a preponderance of evidence does not establish the latter. New York Life Ins. Co. v. Ross, 30 F.(2d) 80 (C. C. A. 6); Metropolitan, etc., v. Hogan, supra; Messervey v. Standard Accident Ins. Co., 58 F.(2d) 186 (C. C. A. 2); Metropolitan Life Ins. Co. v. Broyer, 20 F.(2d) 818 (C. C. A. 9).

Other parts of the court's charge definitely told the jury that, in order to recover, plaintiff must show by preponderance of evidence that deceased came to his death wholly through accidental causes; that if this proposition is not established by a preponderance of the evidence plaintiff cannot recover; that if the evidence thereon was evenly balanced, or if the jury is unable to say that a preponderance of the evidence shows the death to have been accidental, the verdict should be for the defendant; that the burden is not on the defendant to show it is not liable; and that the jury has no right to disregard these rules, but should strictly adhere to them. With these and yet further kindred cautionary charges, we do not believe that the assailed charge could have misdirected the jury. In this connection we refer to what we hereinafter say respecting the absence of indications of suicide.

■ It is contended there was error in rejecting evidence offered by appellant to the effect that appellee, in telephoning the police station immediately after the death, stated that deceased had killed himself. While the witness could not identify appellee as the person with whom his conversation was had, it does not appear that appellee had any more knowledge upon that subject than any one else. She had been out of the house for hours, and when she returned she found him, dead or dying, sitting in the bathtub, with a lighted gas stove in the bathroom and the odor of gas pervading the house. Even if from these facts she reached the conclusion that he had intentionally turned on the gas, or had intentionally burned the stove to exhaust the oxygen in the small bathroom, her opinion would not have tended to show whether or not the death was self-inflicted.

A charge to the jury must be considered in the light of the evidence in the case. The entire record indicates scarcely a suggestion of fact which points toward suicide; but, rather, there was quite unusual unanimity of indications to the contrary. He had an engagement to dine that evening at the Illinois Athletic Club with some friends, as had been his weekly custom for years; his clean underwear, dress clothes, shirt, and neckwear had been laid out upon the bed; his razor lay there ready to be used; he had been spending some time in his studio at the home preparing a lecture to be given at the Chicago Art Institute some days later; he was apparently cheerful and in good health when last seen alive, and there was no evidence of financial or other embarrassments. Early the same morning he had shoveled the snow from his own and a neighbor's walks. We find practically nothing in the record pointing toward his self-destruction. Indeed, no pleading in the case alleges it, and no such contention is made in the lengthy briefs for appellant. An expression of opinion thereon by his wife would have had no tendency to show suicide, and there was no error in rejecting this evidence.

■ Complaint is made with respect to the rejection of proffered evidence to the effect that a coroner's jury, assembled immediately after the death, had returned a verdict of suicide, but which verdict could not be found. A coroner's verdict of accidental death was attached to the proofs of death delivered to appellant, and as such was received in evidence. The court properly and definitely instructed the jury that this constituted no evidence of the cause of death, but was received in evidence merely to show compliance with the policy which required

proof of death to be delivered to appellant. A coroner's verdict does not constitute evidence of any fact or finding therein stated, and is not admissible as such. Peoria Cordage Co. v. Board, 284 Ill. 90, 119 N. E. 996, L. R. A. 1918E, 822; Albaugh-Dover Co. v. Board, 278 Ill. 179, 115 N. E. 834; Novitsky v. Knickerbocker Ice Co., 276 Ill. 102, 114 N. E. 545; Wasey v. Travelers' Ins. Co., 126 Mich. 119, 85 N. W. 459; Krogh v. Brotherhood, 153 Wis. 397, 141 N. W. 276, 45 L. R. A. (N. S.) 404; In re Dolbeer's Est., 149 Cal. 227, 86 P. 695, 9 Ann. Cas. 795.

What we have said of the absence of evidence pointing to suicide likewise here applies.

 It is complained that evidence was improperly admitted for appellee of employees of the gas company, to the effect that records of gas tests which the company periodically made indicated that at about the time of the accident there was a certain content of carbon monoxide in the gas. The contention is that the records were not admissible because not testified to by available persons who had made the tests. It is a matter of common knowledge that illuminating gas contains poison and if inhaled in sufficient quantities will cause death, or, as has frequently happened, if burned in small rooms such as bathrooms may exhaust the oxygen and thereby cause the death of one in the room. We think that common experience sufficiently manifests this fact, so that whatever, if any, irregularity there was in admitting the records in evidence was of no materiality.

The error alleged in certain hypothetical questions asked of and answered by medical experts on behalf of appellee does not impress us as in any event carrying any likelihood of serious harm to appellant. While we think the questions were substantially accurate, a few questions upon cross-examination would have revealed any fallacy to which the questions as originally asked might have led; and, in any event, it lay within the power of appellant to develop by its expert witnesses the effect upon the conclusions which appellee's witnesses reached through any improper inclusion or omission of elements in the hypothetical questions.

 As to whether in fact the death was caused by carbon monoxide poison inhaled with illuminating gas, there was some contrariety of evidence. It was conceded that in death resulting from carbon monoxide poisoning the skin will show a pink or ruddy post mortem appearance and the blood a deep red color. Some who examined the remains testified to the presence of these conditions, while some others gave evidence of their absence. This raised a direct issue of fact as to whether or not the death was caused as in the declaration alleged, and thereon the jury's verdict is binding. And so also as to any issue regarding any possible contributing nonaccidental cause for the alleged accidental death. While there appears no substantial evidence of such contributing cause, yet if appearing this also would have involved a question of fact for the jury.

Some other contentions of error are urged in the briefs which we do not deem of sufficient import to merit discussion here.

The case of Schachner (appellee) v. Employers' Liability Assurance Corporation, 268 Ill. App. 503, supra, involved a similar accident insurance policy which was held by the same deceased at his death. Some of appellant's main contentions here were there also made. Recovery on that policy was upheld.

The judgment is affirmed.